381 So.2d 591 (1980)
George Edward CALDWELL
v.
STATE of Mississippi.
No. 51698.
Supreme Court of Mississippi.
February 27, 1980.
*592 Bridgforth, Woods & Buntin, Taylor Buntin, John G. Zizmann, Southaven, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, BROOM and COFER, JJ.
BROOM, Justice, for the Court:
Capital murder is the offense for which the appellant George Edward Caldwell (defendant) was convicted in the Circuit Court of DeSoto County.[1] After the jury was unable to agree upon the punishment, a life sentence was imposed against the defendant and he appeals, arguing that the court erred in (1) jury selection procedures, (2) instructing the jury, and (3) in not directing his acquittal. We reverse.
The record established that the defendant, after having an argument with the assistant manager of a supermarket in Hernando concerning payment for a pack of cigarettes, shot and killed Police Officer Key outside the supermarket. The dispute between the defendant and the assistant manager centered around whether the defendant should stand in line in order to receive his change. When the assistant store manager indicated that he might call the police, the defendant, who was armed, replied, "Call the police, Marines, the Army or anybody. I will be out here waiting... ." When Policeman Key arrived, the shoot-out erupted (who fired first is unclear) and the defendant fatally shot the officer with a pistol. In the affray, the defendant and the supermarket assistant manager were also wounded.
In qualifying the prospective jurors, the trial judge asked whether the state "... ever had to prosecute or present or handle any matter against any member of your family or a close personal friend?" There was no response to this question and in due course both the state and the defendant were allowed to make their voir dire examination of the prospective jurors. A jury was accepted and the twelve together with two alternate jurors were seated to try the case, after which the court recessed proceedings for lunch. Before the taking of testimony commenced one of the jurors, Mrs. Busby, was asked to come before the court. She, together with the attorneys for both sides, went into chambers where Mrs. Busby was questioned by the trial judge. The court's examination of her brought forth information that her son, Jimmy Lee Busby, was under indictment in DeSoto County in a criminal matter, and that along with her son, she had been in the DeSoto County Youth Court on a prior occasion.
Further questioning by the circuit judge brought forth from Mrs. Busby her explanation that she remained mute to the court's question on voir dire simply because she did not understand the question. At that time, over objection of the defendant, the state was permitted to peremptorily challenge and excuse Mrs. Busby after which the court replaced her with alternate *593 juror Nails. In that posture, the defendant sought to peremptorily challenge juror Nails (the alternate which had moved up), but the court refused to permit the requested challenge.
DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO PEREMPTORILY CHALLENGE JUROR BUSBY AFTER THE JUROR HAD BEEN PRESENTED TO AND FINALLY ACCEPTED BY BOTH THE STATE AND THE DEFENDANT?
Regarding the action of the trial court in allowing the state to peremptorily challenge juror Busby, and in refusing to allow the defendant to similarly excuse alternate juror Nails, Mississippi Code Annotated § 99-17-3 (1972) is germane. The statute says:
[A]ll peremptory challenges by the state shall be made before the juror is presented to the prisoner. In all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges.
Permitting the state to peremptorily challenge juror Busby after her acceptance by both sides is argued by the defendant to be "in direct violation of the statute and in violation of his constitutional rights ..."
Argument of the state is that whether a juror is fair and impartial is a judicial question, and that the judge on his own motion could have rightly excused Busby. According to the state, our statutes concerning jury selection are directory rather than mandatory. Thorne v. State, 348 So.2d 1011 (Miss. 1977); Russell v. State, 220 So.2d 334 (Miss. 1969); Upshaw v. State, 231 Miss. 158, 94 So.2d 337 (1957); and Jefferson v. State, 52 Miss. 767 (1876) are relied upon by the state.
When measured according to the facts, the cited cases are hardly analogous to the situation here. Russell upheld the action of a trial judge in excusing a juror after a trial had begun where it was discovered that the juror had participated as a juror in the justice court trial of the cause. Our action there was founded largely upon the logic that a trial judge has considerable discretion in such matters absent any showing of prejudice. The "abstract right" of the judge to change the makeup of the jury was discussed in Jefferson which upheld the trial judge's excusing of a juror who subsequent to the beginning of the trial arose and made it known that he served on the grand jury which returned the indictment against the defendant.
According to the state, it is "permissible, if not mandatory, for the trial court to set aside incompetent jurors. The question is a judicial one... ." Indeed, much of the state's argument here is premised upon the theory that juror Busby (removed peremptorily by the state) was "incompetent." We are not persuaded by the state's argument for the reason that the record does not show that juror Busby was "incompetent." Without citing any authority on "incompetency", the state takes the position that Busby lacked competency merely because her son was under indictment and additionally she had at some time been in youth court with him. We know of no authority holding that one whose son was under indictment and had been in youth court is an incompetent juror. Of course, such events in her son's life may be factors but the test should be  is the juror fair and impartial or shown to be disqualified. To hold that Busby was here shown to be an incompetent juror would be a strained interpretation. This is true because the record shows that before the jury was empanelled the court asked the jurors if they could be considered "fair and impartial" in this particular trial. Additionally, the jurors were asked by the attorneys if they could give both sides a fair trial. Juror Busby having made no indication that she could not be fair and impartial (on voir dire or when she was subsequently excused), we think she was before the court as a competent juror absent some indication that she was rendered incompetent because of some fact or circumstances. We cannot presume as a matter of law that her son's indictment and her past experience of having attended youth court with him would cause her to be prejudiced as a juror.
*594 According to the defendant after the court permitted the state to peremptorily challenge and excuse Busby, then the defendant should have been permitted in like manner to challenge alternate juror Nails. The state notes that under Mississippi Code Annotated § 13-5-67 (1972), alternate jurors "in the order in which they are called shall replace jurors, who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Under the statute the state says the alternate Nails, having been accepted by both sides, was not under the statute subject to peremptory challenge by either party. Under Dixon v. State, 164 Miss. 540, 143 So. 855 (1932), the state argues that both sides having accepted alternate juror Nails, the judge properly refused to permit the defendant to peremptorily challenge Nails. In its brief, the state says: "Alternate juror Nails stood in this posture and, unlike juror Busby, there was no compelling reason to set him aside." As previously stated we have not been shown any "compelling" reason for Busby's excusal on the record wherein she gave no indication and none was otherwise shown that she would be other than a fair and impartial juror.
Cook v. State, 38 So. 113 (Miss. 1905) held that "the trial judge discriminated against the defendant when he permitted the State to exercise, belatedly, a preemptory challenge against juror Wade and immediately thereafter denied the defendant's request to do likewise with regard to juror Kilgore." The state says that in Cook, "jurors Wade and Kilgore stood on equal footing. In the case at bar, jurors Busby and Nails didn't. While one was competent to serve, the other was not." Again, the state considers Busby as being incompetent but as previously noted, we are not persuaded. Perhaps it may be arguable that some negative inference could be drawn from the fact that her son was under indictment and had been in youth court, but we are unwilling to hold that Busby's actual incompetence was established.
The state says that under Mississippi Code Annotated § 13-5-67 (1972), "[T]he case sub judice, of course, is a `capital case.' Furthermore, the statute expressly states that `[t]he additional peremptory challenges provided for herein may be used against an alternate juror only, and other peremptory challenges allowed by law may not be used against an alternate juror.' (Emphases supplied)." Under the statute as interpreted by the state alternate juror Nails could have been challenged peremptorily by the defendant only in the event that he had one, or both, of his specially designated peremptory challenges remaining un-exercised. Then the state points out that the record does not clearly show that this defendant had already exercised his two alternate juror challenges, and therefore it is said that reversible error may not be predicated upon refusal of the trial judge to allow the defendant to peremptorily challenge an alternate juror.
Upon the peculiar facts of this record where it does not appear that the juror Busby was in fact "incompetent" as a juror, the trial judge erred in allowing the state to peremptorily excuse that juror. The error would have been greatly minimized (if not cured), had he then allowed the defendant to challenge alternate juror Nails who replaced Busby by a like challenge. The case has similarities to Cook, supra, in that there seems to be discrimination in favor of the state by failure of the court to allow the defendant to excuse the alternate juror in the same fashion that the state was allowed to excuse juror Busby. Fairness requires that the defendant be granted another trial.
Second proposition argued is the contention that
THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT AN INSTRUCTION ON MANSLAUGHTER, AS CONTAINED IN APPELLANT'S INSTRUCTIONS D-9, D-10, and D-11, AND FURTHER ERRED IN GRANTING THE STATE A CAPITAL MURDER INSTRUCTION AS GIVEN IN INSTRUCTION S-1.
Refused Instruction D-9 is in the following language:

*595 The Court instructs the jury that, as a matter of law, the attempted arrest of the defendant by Rory Key was an unlawful attempt to arrest the Defendant.
This instruction is patently erroneous, being totally peremptory in nature and if given would have the effect of constituting a directed verdict of manslaughter.
Refused Instruction D-10 is in the following language:
The Court instructs the jury that the unnecessary killing of another person while resisting an attempt by such other person to do any unlawful act, or after such an attempt shall have failed, is manslaughter, and if you believe from the evidence beyond a reasonable doubt that the defendant killed Rory Key, a human being, while the defendant was resisting Rory Key's unlawful attempt to arrest him, or after Rory Key's unlawful attempt to arrest the defendant had failed, and that defendant's killing of Rory Key was unnecessary, then you shall find the defendant guilty of manslaughter.
In arguing that the court committed reversible error in refusing the above jury instructions, the defendant relies upon Mississippi Code Annotated § 97-3-31 (1972), which provides:
Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.
He contends that "the testimony of the State's own witnesses at trial show that the action of the officer was unlawful and that the appellant could be guilty of no more than manslaughter under the laws of the State of Mississippi."
Details pertinent here are summarized as follows. The defendant, along with Miller and Bowen, drove to the Big Star Grocery Store where Bowen purchased beer for another person. Inside the store the defendant got into an argument but exited before any serious trouble had developed. Shortly thereafter the defendant went back inside to buy cigarettes  the store was crowded and checking counters busy. He tried to purchase the cigarettes without getting in line, but was not permitted to do so, and then he went outside. Assistant Manager Patrick followed the defendant outside where the defendant gave him a dollar bill but was told that he would have to come back inside the store for his change. The defendant followed Patrick back inside the store and was described as being "loud and staggering like he was drunk or crazy and was hollering for his money." At that time Patrick advised the defendant "to take your dollar and I will call the police and get you off the street before you get in any trouble or hurt somebody." The reply of the defendant, according to Patrick's testimony, was "call the police, the Marines, the Army, or anybody. I'll be out here waiting ..." (Emphasis supplied). The defendant then went outside the store and began pacing up and down the shopping center in an agitated mood while sipping beer. Mr. Patrick further testified that when Officer Key arrived, Key asked Patrick "... to go down and show him who was causing the disturbance." At that time the defendant was still uncooperative, unruly, and refused to obey the officer's commands.
In its brief, the state cogently argues that "[T]he facts clearly justified a stop and temporary detention for investigatory purposes and, under the circumstances, a `pat-down' of Caldwell's outer clothing was reasonable. It appears the defendant was a keg of dynamite with a two-inch fuse simply looking for an excuse to explode." Thesis of the state's argument is that the refused instructions D-9, D-10, and D-11 did not embody all of the criteria "necessary for a factual resolution of the lawfulness of the officer's conduct. They were consequently misleading and foreclosed from the jury's consideration an evaluation of Officer Key's actions from the standpoint of a stop and temporary detention rather than an attempt at the moment to effect an arrest."
We think there is merit to the position taken by the state because under our decisional law, the jury could have found that Policeman Key was not intending to arrest *596 the defendant but was merely making a reasonable investigative stop. In discussing such temporary stops, we stated in Singletary v. State, 318 So.2d 873, 876 (Miss. 1975) that:
(2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest;

(3) Arrest: An arrest may be made only when the officer has probable cause.
(318 So.2d at 876). (Emphasis supplied).
Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) is a case wherein the Supreme Court of the United States discussed reasonable cause for a stop and frisk action by a peace officer. Here the High Court stated:
A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Terry v. Ohio, 392 U.S.] [1] at 21-22, 88 S.Ct. [1868], at 1879-1880, [20 L.Ed.2d 889]; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1970).
(318 So.2d at p. 877).
In Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Supreme Court of the United States also recognized that a stop and frisk confrontation may be justified by circumstances which would not justify a "traditional arrest." As stated by us in Singletary v. State, 318 So.2d 873 (Miss. 1975):
The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. [392 U.S.] at 30, 88 S.Ct. [1868] at 1884.
(318 So.2d at p. 887). (Emphasis supplied).
Therefore, we conclude that upon this record it is clear that Officer Key, the victim of the defendant's firing of his pistol, if not justified in arresting the defendant (and this is not necessary to be decided here) certainly had a right to temporarily detain the defendant as a "stop and frisk." We think that Policeman's Key's action was proper where so recently the defendant had suggested that Patrick call the police, Marines or Army (while he waited), and surely under those circumstances the defendant should have reasonably expected action including intrusion and detention by some law officer. The testimony would have justified a jury finding that Key was doing no more than making a stop and frisk of the defendant when the defendant drew his pistol and began firing at the officer. In addition to being unduly peremptory in form, the rejected instructions excluded from the consideration of the jurors their right to find that Officer Key (although he may not have been conducting a lawful arrest) was doing a lawful act: effectuating a "stop and frisk" of the defendant. The controversial instructions rejected by the trial court made no distinction whatever as between Officer Key's possible lawful right to arrest the defendant or to make a stop and frisk detention. They are premised upon a presupposition that Officer Key was acting outside the law throughout the entire episode in which he was killed. Instruction D-11's effect is to require the jury as a matter of law to find that the alleged attempted warrantless arrest constitutes an "unlawful act" without Key advising the defendant that he was under arrest. The mere absence of a warrant and the mere lack of advice being given to the defendant that he was being arrested did not make Officer Key's action "an unlawful act" per se because, as stated above, the jury could have found that his actions were *597 a lawful "stop and frisk" action rather than any attempted arrest.
The defendant also argues that the trial court erroneously granted Instruction S-3 (referred to as S-1 in appellant's brief) at the guilt phase because "... it was error for the trial court to instruct the jury concerning capital murder... ." At the trial level the only objection to the instruction was that it constituted a "murder" instruction. There is no merit to this part of the argument on the record as made.
Last argument made is that
THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION FOR A DIRECTED VERDICT, MOTION FOR A PEREMPTORY INSTRUCTION OF GUILTY [sic] AND MOTION FOR A NEW TRIAL.
Our view of the record is that the testimony made out a case sufficient to give to the jury and therefore there can be no merit to the defendant's contention that he was entitled to a directed verdict or peremptory instruction.
We note that the record in the trial of this cause consists of three volumes whereas the previous trial record contained only two volumes (347 So.2d 1389). Our previous opinion states that an instruction on manslaughter was properly refused, and then we stated that the record established "either murder or killing in self-defense." At the former trial, a manslaughter instruction (D-8) was sought upon the theory that the defendant killed Officer Key "in the heat of sudden passion." Other instructions at the former trial (D-7) and an un-numbered instruction were premised upon the thesis that the defendant anticipated that Officer Key had intention of killing him or inflicting some physical harm upon him. It was in that context that our previous opinion held that the issue was that of murder or self-defense, but in the instant case consisting of three volumes the issue of manslaughter is raised by the record in a different posture from the former record. Here manslaughter is premised upon the purported unlawful act of Officer Key and not upon "sudden heat of passion" theory formerly espoused. The prior brief makes no mention of Mississippi Code Annotated § 97-3-31 (1972) on "unnecessarily" killing another, which is now argued as the basis of defendant's theory of manslaughter. Upon the record as made in this case the defendant was entitled to present to the jury an instruction on the theory of "unnecessarily" killing Officer Key while Officer Key was allegedly in the act of committing or attempting to commit some unlawful act. Therefore, upon remand, depending upon the record as then made, appropriate instructions may be given on this issue but they should not exclude from the jury consideration of whether Officer Key was taking a lawful "stop and frisk" action.
On account of the trial court allowing the state to peremptorily challenge a juror whom both sides had already accepted, reversal is required.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., takes no part.
NOTES
[1] This case appeared here previously. 347 So.2d 1389 (Miss. 1977). Details of the shooting affray are given in the reporter cited and will not be restated here. At the first trial, reversal was ordered so as to provide a bifurcated trial under Jackson v. State, 337 So.2d 1242 (Miss. 1976).