I.
This case presents questions concerning the authority of a circuit court to dismiss a juror at the end of the evidence but before the case is submitted to the jury and, more particularly, the responsibilities of this Court on appeal when the circuit court has dismissed a juror and called up an alternate. Because the juror failed on voir dire to give substantial, material information when asked a clearly worded question, and repeatedly so, we hold the circuit court acted within its authority in dismissing her.
We affirm.
 II. A.
On July 31, 1987, the Grand Jury of Scott County, Mississippi, charged Billy Myers, Jr. with the crime of selling alcoholic and intoxicating beverages, to-wit: Seagram's gin. The evidence reflects that on the evening of May 23, 1987, Preston Carter, an employee of the Jackson Police Department, was working in Scott County with two agents of the Alcoholic Beverage Control Commission, Mark Williams and John Hall. Carter served as an undercover agent making liquor buys from individuals suspected of being in the business of selling alcoholic beverages.
Myers owns a nightclub located off Highway 13 in Morton, Mississippi. At approximately 9:30 in the evening, plain clothed Officer Carter entered the premises and approached the individual he had been told was Myers and asked for some gin. Myers walked to a little sink area behind the bar where there was a cardboard box with its top cut off and picked up a small bottle of Seagram's gin and handed it to Carter, who *Page 556 
paid Myers $4.00, got two cups of ice, and then left the premises.
Myers' defense was that none of this happened. He says he wasn't even there. Myers called four "alibi" witnesses, each of whom testified that he or she was in the nightclub on the evening of May 23, 1987, but that Myers was not. Myers took the witness stand in his own defense and denied that he was on the premises at any time on May 23.
The jury, nevertheless, found Myers guilty as charged, and the Circuit Court, finding that Myers was a third offender, sentenced him to a term of three and a half years imprisonment. Miss. Code Ann. § 97-31-27 (1972).
 B.
The outcome determinative point arose after all of the evidence had been received, and after both the prosecution and the defense had rested, but before the case was submitted to the jury for its consideration. The prosecuting attorney approached the Court and moved to exclude juror Barbara Kay Smith on grounds that her husband, Willie Patrick, Jr., had been convicted in United States District Court on charges of perjury incident to investigation of "bootlegging" operations and that he had been convicted previously in Scott County of "bootlegging." The prosecutor noted that juror Smith did not disclose any of these facts on voir dire examination at the time of jury selection. He asked that the first alternate juror replace Smith. Through counsel, Myers strenuously objected.
On voir dire examination of the prospective jurors before the trial began, the prosecuting attorney asked no questions whether any prospective jurors had relatives or family members who had been convicted of a crime, nor did the Court in its general voir dire. Defense counsel, however, asked of the panel as a whole,
 Ladies and gentlemen, now, is there anybody here, anybody else, that has any immediate family or relative involved in a criminal case? . . . Is there anybody that has family or relative that has been involved in a criminal case? . . . . So, is there anybody on this panel that has a member of their immediate family or a relative that has been involved in a criminal action?
Two jurors answered in the affirmative. The record reflects no response from Juror Smith, from which we may assume she remained silent.
Returning to the prosecution's eleventh hour challenge, we find first that the Circuit Court examined the juror information form that Smith had completed.[1] On that form Juror Smith had listed Willie Patrick, Jr. as her husband. The prosecuting attorney offered the excuse that he had not known of Juror Smith or her husband, but that a few minutes before he made his motion, a deputy sheriff who previously had not been in the courtroom recognized Smith as the wife of Willie Patrick and told of the facts the prosecution used to predicate its motion to excuse. The Court responded, "I think you are on notice when it is in the competent juror form."
The Court called Juror Barbara Kay Smith into chambers and interrogated her. Juror Smith acknowledged that Willie Patrick, Jr. was her husband, that he was on probation with the federal court on a liquor related charge, and that he had been involved in liquor violations in Scott County. She insisted, however, that she could serve as a juror. "Like I said, after I heard both sides, I could give a fair, you know . . . trial."
The Circuit Court then held that Juror Smith had filled out the juror information form correctly and added, *Page 557 
 She has done nothing at all, as far as I can tell, incorrectly, except possibly not know[ing] the full importance of some of the answers in voir-dire. That will be a matter of record, because the voir-dire is on record. This juror, as far as I am concerned, has committed no misconduct and has done everything as she should.
It is important to realize that, when the Court made these remarks, it did not have access to the specific questions defense counsel had asked of the jury panel on voir dire, as quoted above.
The Court then excused Juror Smith.
 III.
On appeal Myers charges error in the Circuit Court's removal of Juror Smith and urges reversal. The matter is initially controlled by statute. Miss. Code Ann. § 13-5-67 (1972) provides that an alternate juror
 shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.
Our Circuit Courts have no license to remove jurors and replace them with alternates, willy nilly. We read this statute against the backdrop of our general rule that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter. Pickett v. State, 443 So.2d 796, 799 (Miss. 1983); Watkins v. State, 262 So.2d 422, 423 (Miss. 1972); Holloway v. State, 242 So.2d 454, 455-56 (Miss. 1970).
The statute provides only two circumstances where a juror may be replaced once accepted and the trial has begun. Juror Smith was certainly not unable to perform her duties. Our question then is whether she had become disqualified.
Miss. Code Ann. § 13-5-1 (1972) provides qualifications for jury service and declares ineligible anyone who has been "convicted of an infamous crime, or the unlawful sale of intoxicating liquor within a period of five years." There is no suggestion that juror Smith had been so convicted. Her competency is not corrupted by her husband's prior convictions.
Caldwell v. State, 381 So.2d 591 (Miss. 1980) illustrates the point. In Caldwell, the defendant had been convicted of capital murder and sentenced to life imprisonment. The prosecuting attorneys sought to challenge peremptorily a juror named Busby, after Juror Busby had been accepted by both the prosecution and the defense, but before the taking of testimony had commenced. The prosecution pointed out that juror Busby's son was under criminal indictment at the time and that she had been in youth court with him. The Circuit Court sustained the belated challenge. Thereafter, the defense sought to challenge the alternate juror brought into the box, but the Court refused. On appeal, this Court first held that juror Busby was competent to serve. Caldwell v. State, 381 So.2d at 593.
The Caldwell Court thereafter held,
 The trial judge erred in allowing the state to peremptorily excuse that juror. 381 So.2d at 594.
This Court then opined that,
 The error would have been greatly minimized (if not cured) had he then allowed the defendant to challenge alternate juror Nails, who replaced Busby by a like challenge.
381 So.2d at 594. The Court nevertheless reversed and remanded for a new trial. Applying Caldwell, we may only hold Barbara Kay Smith ab initio was a competent juror at the trial of Billy Myers, Jr.
The word "disqualified" in Section 13-5-67 has breadth considerably beyond that of Section 13-5-1's initial qualifications for jury service. Russell v. State,220 So.2d 334 (Miss. 1969) is illustrative. The defendant had been convicted of game and fish violations in Justice of the Peace Court and had appealed to the Circuit Court and demanded trialde novo. In the course of his trial in Circuit Court, at a noon recess, the Court discovered that one of the jurors had served on the jury which had convicted Russell in Justice of the Peace Court. The Circuit Court thereupon removed the juror and replaced him with an alternate juror. On appeal, this Court affirmed, as the juror *Page 558 
at issue was not "qualified" to serve. Davis v. State,512 So.2d 1291 (Miss. 1987) is to like effect. The Court empaneled as a juror an individual who had appeared as a witness for the prosecution at the hearing on defendant's pre-trial motion for change of venue, held some four weeks earlier. The Circuit Court denied defendant's motion to excuse the juror, made after the jury panel had been accepted, but before opening statements and before the taking of any proof. This Court found the juror unqualified to serve and reversed. Davis, 512 So.2d at 1292-93.
Our law further provides that a juror is "disqualified" within Section 13-5-67 where on voir dire examination he or she has withheld information or misrepresented material facts. Odom v.State, 355 So.2d 1381 (Miss. 1978) is our seminal case. Odom
holds that the failure to respond does not warrant this Court granting a defendant/appellant a new trial unless
 the question propounded to the juror was (1) relevant to the voir dire examination; (2) . . . unambiguous; . . . (3) . . . the juror had substantial knowledge of the information sought to be elicited . . . [and (4)] prejudice . . . in selecting the jury could reasonably be inferred from the juror's failure to respond.
355 So.2d at 1383.
We followed the Odom rule in numerous cases. E.g., Carr v.State, 555 So.2d 59, 63 (Miss. 1989); Brown v. State,529 So.2d 537, 539 (Miss. 1988); Stevens v. State, 513 So.2d 603, 605 (Miss. 1987). In Stevens and in our recent case of Shaw v.State, 540 So.2d 26 (Miss. 1989), we held dismissing a juror for good cause and replacing him with an alternate to be within the sound discretion of the trial judge. Shaw, 540 So.2d at 28;Stevens, 513 So.2d at 604. "Good cause" as used in these cases is but a euphemism for "disqualified" within Section 13-5-67.
We need be clear about the nature of the Odom rule. It imports an objective test: in the face of a clearly worded question propounded on voir dire examination, one that bears relevance to the case at bar, has the juror withheld substantial information or misrepresented material facts? Voir dire examination is often the most crucial crucible in forging our primary instrument of justice: the fair and impartial jury. Like a fine suit of clothes, a jury must be tailored to fit, and court and counsel examine prospective jurors under settled rules tending toward that fit. When offering challenges for cause and challenges peremptory, parties and their lawyers must rely on the objective candor and responsiveness of prospective jurors, and nothing turns on who asks the question, so long as it was clearly worded. See Brown v. State, 529 So.2d at 539; Caldwell v.State, 381 So.2d at 592.
Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal. We presume prejudice. Where, as a matter of common experience, a full and correct response would have provided the basis for a peremptory challenge, not rising to the dignity of a challenge for cause, our courts have greater discretion, although a discretion that should always be exercised against the backdrop of our duty to secure to each party trial before a fair and impartial jury.[2]
In the case at bar, the record reflects that defense counsel on voir dire examination of the panel of prospective jurors, asked on three separate occasions whether any prospective juror or any "relative or member of the juror's immediate family" has been involved in a criminal proceeding. The objective facts established in the record are (1) that Juror Smith's husband had suffered a liquor related conviction in federal court and that he was, at the time, on probation from his sentence incident to that conviction, and (2) that Juror Smith's *Page 559 
husband had a prior "bootlegging" conviction in Scott County. The questions propounded were worded adequately and repeated to the extent that they could not fairly have been misunderstood. Indeed, two prospective jurors responded in the affirmative. All the while, Juror Smith sat, silent.
Where, as here, the defendant is on trial for a felony liquor charge, common sense suggests that the presence on the jury of a person whose spouse has suffered two liquor related criminal convictions presents a potential for prejudice to the rights of the prosecution for a fair trial. The objective facts of this case and specifically, the objective, rational relationship of the information withheld and the issues for trial were such that the prejudice part of our Odom rule was satisfied. The Circuit Court's action in removing Juror Smith was sufficiently within the scope of its authority exercised under that rule that we should not intervene.
SENTENCE OF THREE AND ONE-HALF YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR SALE OF INTOXICATING LIQUOR (THIRD OFFENSE) AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P. JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
[1] In prior cases where we have confronted a similar question, the record has been woefully inadequate. Commonly voir dire has not been transcribed and made a part of the record, nor has it been made to appear that the Circuit Court fully heard and investigated the matter in chambers. Shaw v. State,540 So.2d 26, 28 (Miss. 1989) and Stevens v. State, 513 So.2d 603, 604-605 (Miss. 1987), both strongly counsel that a complete record be made, and in this regard we are pleased to find that both the Circuit Court and the court reporter more than performed their duties.
[2] Our trial judges should be sensitive to the possibility that a party may seek peremptory challenges in excess of those allowed by law. See Rule 5.06, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979); Rule 47(c), Miss.R.Civ.P.