# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00519-SCT

*DAVID WAYNE HAILES*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 5/3/96 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | E. J. MITCHELL, III |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/1/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

David Wayne Hailes was convicted in the Circuit Court of Clarke County on a charge of sale of cocaine on March 6, 1992, and was sentenced to a term of thirty (30) years in the custody of the Mississippi Department of Corrections and fined thirty thousand dollars ($30,000.00). The Circuit Court of Clarke County denied a Motion for New Trial on March 13, 1992. Hailes appealed his conviction and fine in which this Court affirmed the conviction and sentence per curiam and denied the petition for rehearing.

Subsequently, Hailes filed a "Motion and Brief to Vacate Conviction and Sentence Under Post Conviction Collateral Relief Act. . . ." This Court granted this motion November 15, 1995, thereby

permitting Hailes to file his motion for post-conviction relief with the Circuit Court of Clarke County. The lower court denied this Motion by Order on May 3, 1996. It is from the proceedings below that Hailes brings this matter before this Court on appeal raising the following:

**I. WHETHER HAILES WAS DEPRIVED OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY BECAUSE OF JUROR'S FAILURE TO DISCLOSE INFORMATION DURING VOIR DIRE CONCERNING HER COMPETENCY TO SIT ON THE CASE.**

**II. WHETHER HAILES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS.**

**III. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO QUESTION DEFENSE WITNESS ABOUT CRIMINAL CHARGES FOR WHICH HAILES HAD NOT BEEN CONVICTED.**

**IV. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO THREATEN DEFENSE WITNESS WITH CHARGE OF PERJURY IN THE PRESENCE OF THE JURY.**

**V. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE TO IMPEACH HAILES WITH EVIDENCE OF OTHER CRIMES WITHOUT AFFORDING HIM THE OPPORTUNITY TO REFUTE THESE CLAIMS ON RE-DIRECT.**

**VI. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE WITNESS TO TESTIFY TO OTHER CRIMINAL CHARGES ON REBUTTAL WHICH WERE NOT FOUND IN THE INDICTMENT AND FOR WHICH HAILES HAD NOT BEEN CONVICTED.**

**VII. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE WITNESS TO TESTIFY TO OTHER CRIMINAL CHARGES OF HAILES IN THE STATE'S CASE IN CHIEF.**

Furthermore, in the brief submitted, Hailes presented an additional issue:

**VIII. WHETHER THE PROSECUTOR'S FAILURE TO DISCLOSE INFORMATION CONCERNING A JUROR OF THE TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT, WHICH REQUIRED A NEW TRIAL.**

## STATEMENT OF THE FACTS

Hailes claims in his Post-Conviction Collateral Relief Motion that he was deprived of his constitutional right to a fair and impartial trial because Juror Brenda McKines' husband was an undercover narcotics agent and this fact was not revealed to the Court during the voir dire phase of trial. Hailes alleged that he became aware of this fact four (4) days after he was convicted of selling cocaine while he was still incarcerated in the Clarke County jail.

Hailes further alleged that Juror McKines approached him at the jail and stated that she should not have served on his jury because her husband was a narcotics agent for Clarke County and helped

investigate the crime for which Hailes was on trial. She also stated that her husband knew that Hailes had been under investigation for the sale of cocaine. She then apologized to Hailes for not revealing the information to the Court.

After learning this information, Hailes contends that he informed his attorney, Mark Howard, of the same and that Attorney Howard failed to utilize this information in a Motion for New Trial or to get his conviction reversed on appeal.

However, Juror McKines testified that she did not make any such statements to Hailes. In fact, she recalled going to the Clarke County jail with a church prayer group where Hailes saw her and began shouting and cursing at her, stating that he hated her. Juror McKines also testified that she and her husband, Willie McKines, were married at the time she served on the jury of Hailes' trial. However, they were estranged at this time, were not living together, nor had they ever lived together for any significant period of time since being married in 1990. They did live together for a brief amount of time after the trial. Thus, Juror McKines did not return home to her husband or discuss Hailes' trial with him until after the trial, and only after Mr. McKines witnessed Hailes curse Juror McKines in the jail.

Juror McKines knew that her husband was an undercover narcotics agent, but he never discussed any of his cases with her, including the Hailes case. Furthermore, Mr. McKines did not know that Juror McKines was serving on the jury until he happened to see her in the courtroom by chance. Juror McKines testified that she did not inform the court of her marriage to a law enforcement officer during voir dire because she was never asked that question. Mr. and Mrs. McKines are now presently divorced.

Mr. McKines' testimony corroborated the testimony of Mrs. McKines. He further testified that he was employed with the Quitman Police Department, and that he had no involvement in the investigation or prosecution of Mr. Hailes. In fact, Hailes was investigated by the Mississippi Bureau of Narcotics (MBN). The only law enforcement officers who testified at the trial of Hailes were associated with the MBN. He also stated that he was present for part of the trial as a spectator and until that time had no idea that Mrs. McKines was serving on the jury until he saw her in the jury box after she had been chosen as a juror. When he realized that his wife was on the jury, Mr. McKines informed someone in the District Attorney's Office of the same.

Attorney Mark Howard testified that while he did not question the jurors during voir dire as to whether they were related to or married to law enforcement officers, that had he asked such a question, he would not necessarily have peremptorily stricken Juror McKines. He attributed this primarily to the McKines' estranged marriage. However, he did ask the jurors whether they were or had been personally associated with any law enforcement agency.

Attorney Howard further testified that when he read Mrs. McKines' juror questionnaire form prior to the voir dire phase of trial, he did not understand or could not read the "QPD" entry on the form for "Employment of Spouse." Such an entry indicates that Juror McKines husband is employed with the Quitman Police Department.

Attorney Howard also testified that he thought that he and Hailes had a good attorney-client relationship prior to trial and during trial, until Hailes testified that he had taken a leave of absence

from work and that he had never tested positive for drugs. This testimony was impeached when Hailes' former employer testified that Hailes was terminated from employment due to several tests in which he tested positive for cocaine.

Attorney Howard testified that Hailes never mentioned Mr. McKines involvement in Hailes' case in any way, despite the fact that at the hearings in this matter Hailes stressed the fact that Mr. McKines had questioned him and investigated him on the Sale of Cocaine charge for which he was convicted.

Finally, Hailes testified at the hearings in this matter. Interestingly, Hailes did not testify to certain matters which he alleged in his petition. For example, Hailes did not testify that he told Attorney Howard about the juror misconduct issue four (4) days after trial. Hailes also did not testify that Ms. McKines told him that she should not have sat on his jury. Hailes further failed to testify or present evidence that Juror McKines and Willie McKines had any contact or communication during the trial, aside from the statement made to Juror McKines informing her that he told the District Attorney's Office they were married.

## DISCUSSION OF THE ISSUES

**I. WHETHER HAILES WAS DEPRIVED OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY BECAUSE OF JUROR'S FAILURE TO DISCLOSE INFORMATION DURING VOIR DIRE CONCERNING HER COMPETENCY TO SIT ON THE CASE.**

In his motion for post-conviction relief, Hailes alleged that he had been deprived of a fair and impartial jury by the empaneling of Ms. McKines who failed to disclose during voir dire that she was married to a law enforcement officer. In *Odom v. State*, this Court held that failure to respond to a question in voir dire does not warrant a new trial unless the trial court determines that the question propounded to the juror was 1) relevant to the voir dire examination, 2) unambiguous, and 3)such that the juror had substantial knowledge of the information sought to be elicited. *Odom v. State*, 355 So.2d 1381, 1383 (Miss. 1978). "If the trial court answers these three inquiries in the affirmative, then the court determines whether prejudice to the defendant could be inferred. If so, then a new trial is ordered." *Fleming v. State*, 687 So.2d 146, 148 (Miss. 1997). The review in this case is limited to whether the trial judge's decision on whether the jury was fair and impartial is clearly wrong. *Fleming* at 148; *Chase v. State*, 645 So.2d 829, 847 (Miss. 1994).

"It imports an objective test: in the face of a clearly worded question propounded on voir dire examination, one that bears relevance to the case at bar, has the juror withheld substantial information or misrepresented material facts?" *Myers v. State*, 565 So.2d 554, 558 (Miss. 1990). Thus, the question presented in this case is whether Juror McKines misrepresented material facts or withheld substantial information during voir dire examination in direct response to a clearly worded and unambiguous question. A review of the record reveals that jurors were never asked in voir dire whether they were related to or married to law enforcement officers. *Odom* inquiries do not appear to be invoked because there was no direct, unambiguous question which required Juror McKines to respond that she was married to a law enforcement officer.

However, the jury was asked several other questions by the court and attorneys regarding their personal feelings about the nature of the present case or whether they had any personal experiences

that were related to the type of charge in the case which would make it difficult to be a fair and impartial juror. Juror McKines did not respond to any of these questions. The jury was also asked whether any of them knew Hailes or his family, to which Juror McKines responded that she knew Hailes and his family. Juror McKines was questioned further about her knowledge of Hailes and responded that she would be able to be fair to both the defendant and the State.

The issue now turns on whether Juror McKines should have announced that she was married to a law enforcement officer in response to any of these type questions. In order to determine that Juror McKines withheld or misrepresented information, any or all of these questions would necessarily have to be interpreted, according to **Odom** and its progeny, as asking jurors whether they were married to law enforcement officers. This Court finds that such general questions are necessarily ambiguous and could not be subject only to this one interpretation.

Furthermore, had the court been apprised of the fact that Juror McKines was married to a law enforcement officer, that she and her husband were estranged, that they did not live in the same house together, that they did not discuss Mr. McKines cases, that Mr. McKines did not even know that Mrs. McKines had been called for jury duty, that Mr. McKines was not involved in the investigation or in any aspect of this case --and had Mrs. McKines stated that she could be fair and impartial to both sides, the court would not have had a valid basis to strike her for cause. **Myers v. State**, 565 So.2d 554, 558 (Miss. 1990); **T.K. Stanley, Inc. v. Cason**, 614 So.2d 942, 949 (Miss. 1992). Only when a juror should have been stricken for cause will prejudice be presumed. **Myers**, 565 So.2d at 558.

Furthermore, the Court is not convinced that the defense attorney would have used a peremptory challenge, based upon the foregoing and upon the fact that Juror McKines knew Hailes and his family. This could equally be a reason not to strike her from a tactical standpoint for the defense. **Id.** Moreover, Attorney Howard testified that he may not have stricken Juror McKines had he known that she was estranged from her husband. In sum, the fact that Ms. McKines was the wife of a law enforcement officer does not prove that Hailes was prejudiced by the participation of Ms. McKines as a juror in his trial. **McNeal v. State**, 617 So.2d 999, 1004 (Miss. 1993). This leads this Court to the unequivocal conclusion that the trial court did not abuse his broad discretion in determining that Hailes was not entitled to a new trial.

## II. WHETHER HAILES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS.

The second issue which must be addressed is whether Attorney Mark Howard provided ineffective assistance of counsel to Hailes as it relates to the juror misconduct issue. The standard in determining ineffective assistance of counsel is a two-pronged test set forth in **Strickland v. Washington**, 466 U.S. 668 (1984). "The test to be applied is (1) whether counsel's overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense." **Taylor v. State**, 682 So.2d 359, 363 (Miss. 1996). The defendant has the burden of proving both prongs. **Id.** "The adequacy of counsel's performance, as to its deficiency and prejudicial effect, should be measured by a 'totality of the circumstances.'" **Id.** However, there is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic. **Cole v. State**, 666 So.2d 767, 775 (Miss. 1995). "In short, defense counsel is presumed competent." **Foster v. State**, 687 So.2d 1124,

1130 (Miss. 1996), see also *Johnson v. State*, 476 So.2d 1195, 1204 (Miss. 1985).

The Court in *Strickland* gave the following guidelines for judicial evaluation of attorney performance:

> No particular set of detailed rules for counsel's conduct can satisfactorily take count of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. [citation omitted] Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

*Strickland*, 466 U.S. at 688-89..

In applying *Strickland*'s first prong to the case at bar, it must first be determined whether Attorney Howard's performance was deficient by professional standards, as it relates to the juror misconduct issue. This presents the question of whether Attorney Howard should have asked a question in voir dire as to whether any of the jurors were related to or married to any type of law enforcement officer. Attorney Howard did not ask this question. He did, however, ask if any of the jurors had been in law enforcement. Attorney Howard also asked whether there was any reason that the jurors felt they could not be fair and impartial in reaching a verdict in Hailes' trial.

It is this Court's opinion that such a question should be considered as part of Attorney Howard's trial strategy. *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984). Attorney Howard's reason for asking or not asking such a question is strictly the product of reasonable tactical judgment. The record shows that Juror McKines knew Hailes and his family. Thus, it is reasonable to conclude that Attorney Howard decided that this was a positive factor for the defense.

The only other possible issue of ineffective assistance of counsel warranted by the evidence is whether Attorney Howard had knowledge of the allegations of juror misconduct at the time he properly filed a Motion for New Trial. There was not sufficient testimony or evidence presented by Hailes to establish that Attorney Howard had knowledge of the allegations of juror misconduct at the time he properly filed the Motion for New Trial on March 13, 1992. Moreover, Attorney Howard testified that he did not have knowledge of this issue at the time he filed a new trial motion. He did learn of this prior to filing the appellate brief which does address the juror misconduct issue. The Court finds that Attorney Howard did not learn about the juror misconduct issue until after the time had run for post trial motions. Therefore, Attorney Howard's conduct falls within the wide range of reasonable professional assistance and does not amount to deficient performance.

Based upon the foregoing, this Court holds that Attorney Howard was not deficient pursuant to the first prong of *Strickland*, by either failing to ask a particular question during voir dire, or by not including the juror misconduct issue in his Motion for New Trial. There is no need to proceed to the second prong of prejudice due to a deficiency, as none existed. Thus, Hailes failed to prove that he

was rendered ineffective assistance of counsel and is not entitled to relief under this portion of his petition.

**III. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO QUESTION DEFENSE WITNESS ABOUT CRIMINAL CHARGES WHICH HAILES HAD NOT BEEN CONVICTED.**

**IV. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE TO THREATEN DEFENSE WITNESS WITH CHARGE OF PERJURY IN THE PRESENCE OF THE JURY.**

**V. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE TO IMPEACH HAILES WITH EVIDENCE OF OTHER CRIMES WITH OUT AFFORDING HIM THE OPPORTUNITY TO REFUTE THESE CLAIMS ON REDIRECT.**

**VI. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE WITNESS TO TESTIFY TO OTHER CRIMINAL CHARGES ON REBUTTAL WHICH WERE NOT FOUND IN THE INDICTMENT AND FOR WHICH HAILES HAD NOT BEEN CONVICTED.**

**VII. WHETHER THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE WITNESS TO TESTIFY TO OTHER CRIMINAL CHARGES OF HAILES IN THE STATE'S CASE IN CHIEF.**

**VIII. WHETHER THE PROSECUTOR'S FAILURE TO DISCLOSE INFORMATION CONCERNING A JUROR OF THE TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT, WHICH REQUIRED A NEW TRIAL.**

These six issues all have a similar legal analysis and will be considered together in order to foster an efficient analysis of this appeal.

The purpose of post-conviction proceedings is to bring to the attention of the trial courts facts not known at the time of judgment. *Foster v. State,* 687 So.2d 1124, 1129 (Miss. 1996). "[P]ost-conviction relief does not lie for facts and issues which were litigated at trial or on direct appeal. Similarly, post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial or on appeal." *Cole v. State*, 666 So.2d 767, 773 (Miss. 1995); See also Miss. Code Ann. § 99-39-21(1994). All six issues risen by Hailes are subject to res judicata or waived and, thus, procedurally barred in that these issues were either decided or could have been decided at trial or on direct appeal. This includes the issue of prosecutorial misconduct which was not raised at trial nor on appeal, but it could and should have been and no reason is advanced by Hailes for his failure to raise the prosecutorial misconduct, if any, in a timely fashion. "By this failure, this allegation has been waived and is outside the scope of this Court's collateral review." *Billiot v. State*, 478 So.2d 1043, 1045 (Miss. 1985).

Therefore, all six of these claims are barred and cannot be considered in this post-conviction relief.

## CONCLUSION

The argument set forth by Hailes, that he was denied a fair and impartial jury because of the impaneling of Juror McKines, is not a successful one. In order to get to the *Odom* inquiries, there must be a failure or refusal by the juror to respond to a question on voir dire. However, there was no failure or refusal to answer questions on voir dire on the part of Juror McKines. There was no prejudice suffered by Hailes as a result of Juror McKines being impaneled as a juror nor was he denied the opportunity to exercise peremptory challenge, especially after Hailes found out that she knew him and his family. There is no indication that the court's judgment was wrong, and there was no error in denying the motion for a new trial on this claim.

Furthermore, Hailes has failed to meet the two-prong *Strickland* test regarding his claims of ineffective assistance of counsel. Attorney Howard's decision to ask or not to ask certain questions during voir dire should be considered part of his trial strategy and, thus, do not met the two-prong test. Additionally, Attorney Howard was not aware of the allegations of jury misconduct until after the time had run for post trial motions. He could not include this allegation at the time he properly filed the Motion for New Trial. Therefore, Attorney Howard's performance was within the bounds of professional standards and was not deficient. Accordingly, Hailes' claims of ineffective assistance of counsel are without merit.

Lastly, the remaining six issues brought before this Court are barred under Miss. Code Ann. § 99-39-21 because they were either decided or could have been decided at trial or on direct appeal.

**LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**