FAIR, J.,
for the Court:
¶ 1. Xavier Vaughn was convicted of manslaughter for the death of Billy Ray Miller. He was sentenced to twenty years’ imprisonment, with fifteen to serve and five years suspended. On appeal, Vaughn raises the following issues: (1) whether the trial court erred by denying his motion for a new trial based upon juror misconduct; and (2) whether the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶ 2. On March 24, 2007, Vaughn shot and killed Miller. That day, Miller attended a repast,[1] uninvited, with seven or eight friends. Around two hundred other people were present. Miller went in search of Vaughn because, earlier that day, the two had a heated argument at Miller’s home, which had ended with Vaughn allegedly vandalizing Miller’s car. When Miller arrived at the repast, he moved through the large crowd and found Vaughn. The two began another heated argument. As a woman moved between the two men to break up the fight, a gunshot was fired and Miller fell to the ground.
¶ 3. The autopsy revealed that Miller died from a gunshot wound to the head. The bullet entered Miller’s head from behind his right ear, exiting through the left side of his head. Several witnesses testified that when Miller was shot, he was facing away from Vaughn and was pushing the woman who had gotten in between him and Vaughn. There was conflicting testimony on whether Miller was armed at the time of the shooting, but Vaughn’s 9mm handgun was the only weapon found on the premises. After four days of testimony from twenty-nine witnesses, the jury found Vaughn guilty of manslaughter.
DISCUSSION
1. JUROR MISCONDUCT
¶ 4. A juror who has withheld information or misrepresented material facts at voir dire is disqualified from service. Miss.Code Ann. § 13-5-67 (Rev. 2012); Myers v. State, 565 So.2d 554, 558 (Miss.1990). This Court uses the analysis set out in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978), to determine whether to grant a new trial on the basis of a juror’s *1292 failure to disclose information during voir dire. Logan v. State, 465 So.2d 339, 340 (Miss.1985). Odom held:
[W]here ... a prospective juror in a criminal ease fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court’s determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered.
Odom, 355 So.2d at 1383(footnote omitted). Odom further held that the trial court’s judgment on whether the jury could be fair and impartial will not be disturbed unless clearly wrong. Id.
¶ 5. “It is readily evident that no firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of prospective jurors. Therefore, each case must be decided on an ad hoc basis considering the facts then before the court.” Id. Here, Vaughn claims juror 35, Elvreen Martin, did not answer the relevant questions asked during voir dire. Further, Vaughn asserts that Martin had “substantial knowledge of the information sought,” and therefore her failure to disclose that information warrants a new trial. See id. at 1383. During voir dire, the jury panel was asked whether anyone was related by blood or marriage to Vaughn. Martin did not respond to the question. The potential jurors were also asked if they lived “in the areas of Timberlane Road or anywhere near Savannah Lane or close to the Copiah County end of Timberlane Road.” Martin stated that she lived on Timberlane Road and that her house was closer to Sontag than the Copiah County line. Martin was later selected as a juror. At the hearing on Vaughn’s motion for a judgment notwithstanding the verdict, Martin testified she was related to Vaughn by blood through her grandchild. When asked why she did not disclose this information during voir dire, Martin stated that she did not learn of the relationship to Vaughn until after the trial. Martin also testified regarding her residence on Timberlane Road. The transcript reflected the following:
Q. And you remember me asking [during voir dire] do you live closer to Sontag or to Wesson, and you told me that you live closer to Sontag, didn’t you?
A. I think so. I believe I did. I haven’t measured it.
Vaughn claims he should be awarded a new trial because Martin had “substantial knowledge of the information sought to be elicited.” But Martin testified that she did not have any of this information prior to trial or during voir dire. The record before this Court does not contradict her account. We cannot say that the trial court abused its discretion, and we find this argument to be without merit.
2. SUFFICIENCY OF THE EVIDENCE
¶ 6. We review a challenge to the sufficiency of the evidence in the light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). We have stated:
Upon reviewing a denial of the motion for judgment notwithstanding the ver- *1293 diet, this Court will consider the evidence in the light most favorable to the appellee (the [S]tate), giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant (the defendant) that reasonable [jurors] could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standard of review, however, is predicated on the fact that the trial judge applied the correct law.
Woods v. State, 19 So.3d 817, 819 (¶ 6) (Miss.Ct.App.2009) (quoting Moore v. State, 873 So.2d 129, 132 (¶ 13) (Miss.Ct.App.2004)).
¶ 7. Vaughn admitted to shooting Miller, but he claimed it was in self-defense. The trial court submitted the case to the jury with instructions on murder, manslaughter, and self-defense. The jury found Vaughn guilty of manslaughter, as defined by Mississippi Code Annotated section 97-3-35 (Rev.2006): “[t]he killing of a human being without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]” On appeal, Vaughn argues that the verdict of manslaughter was against the weight of the evidence and contrary to the law given in the provided instructions.
¶ 8. On the other hand, Mississippi Code Annotated section 97-3-15(l)(e) (Rev.2006) provides that the killing of a human being is justifiable “[w]hen committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises” of the person. Subsection (l)(f) also states that the killing of a human being is justifiable “when committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.” Vaughn also received an instruction based on the “castle doctrine,” which states that there is no duty to retreat when defending oneself or others from imminent death or serious bodily harm on one’s property. Miss.Code Ann. § 97 — 3—15(3)—(4) (Rev.2006).
¶ 9. Vaughn argues that there was insufficient evidence for finding him guilty of manslaughter because there was testimony that he was in a place that he had a right to be and that he had a reason to fear for his safety, and there was credible evidence he committed a justifiable homicide. It was established that Miller was significantly larger than Vaughn, standing 6T" and weighing over two-hundred pounds. There was also testimony that Miller came to the repast with an entourage, looking to confront Vaughn after a heated argument earlier that day. An officer also testified that Vaughn admitted he shot Miller and said it was in self-defense.
¶ 10. The State put on evidence tending to show that Vaughn had a deliberate design to kill Miller. There was corroborated testimony that Miller was neither confronting nor threatening Vaughn at the time he was shot. Witnesses testified that when Miller was shot, he was confronting a woman and facing away from Vaughn. The autopsy revealed that the bullet entered the bottom right of *1294 Miller’s skull and exited at the top left, indicating he was facing away from Vaughn. Although some witnesses testified Miller was armed, there was no weapon found on his body. In fact, the only weapon found on the premises was Vaughn’s 9mm handgun. Eyewitnesses also stated that Vaughn was making verbal threats to Miller right before the shooting. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Vaughn of manslaughter.
3. WEIGHT OF THE EVIDENCE
¶ 11. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted).
¶ 12. Viewed in the light most favorable to the verdict, we cannot say that the evidence weighs heavily against the jury’s decision to find Vaughn guilty of manslaughter. Therefore, we find this argument is without merit.
¶ 13. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF PROBATION, AND TO PAY A $3,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. A large meal, usually in conjunction with a funeral.