## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-00649-SCT

*MONROE AMACKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/14/92 |
| TRIAL JUDGE: | HON. RICHARD WAYNE MCKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY BRADLEY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  PAT S. FLYNN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/13/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/96 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. This case concerns two issues - whether, under these circumstances, the limitations on the defendant's presentation of evidence under M.R.E. 412, the rape shield rule, is unconstitutional as an impairment of the defendant's Sixth Amendment right to present witnesses in defense, and also as an impairment of the defendant's ability to demonstrate that he was not the source of the injury, under M.R.E. 412(b)(2)(A). From the Forrest County Circuit Court, this case is appealed from a conviction of capital rape for which conviction Monroe Amacker was sentenced as a recidivist to life imprisonment without parole. Amacker moved for a new trial, which was denied and from which Amacker filed his appeal on the following issues:

1) DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR BY RESTRICTING AMACKER'S RIGHT TO PRESENT EVIDENCE IN HIS DEFENSE BY EXCLUDING THE TESTIMONY OF JACKIE DAVIS AND JOHNNY MARTONE?

2) DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR BY REFUSING TO ALLOW EVIDENCE OFFERED BY AMACKER TO REBUT THE CONTENTION THAT AMACKER

WAS THE SOURCE OF THE VICTIM'S INJURY?

## II. STATEMENT OF THE FACTS

¶2. Monroe Amacker (Amacker) was the live-in boyfriend of Virginia Davis. He was convicted of raping 12-year-old Jane Smith,[1] who was spending the night with Mrs. Davis' daughter, Jackie, on the night of March 23, 1991. Seven other people also spent the night at the Davis house. The State's testimony consisted of Jane's account of the rape. She unequivocally identified Amacker as the person who came into the bedroom and raped her.

¶3. Chris Poole, Mrs. Davis' grandson who was sleeping in the living room next to Jane's bedroom, testified that he heard Jane during the night telling Amacker to "stop and let me talk to you for a minute." He said he heard that at least four times and heard her use the name, Monroe. Poole said she was crying. On cross-examination, he said he did not go to her aid because he "didn't think it was any of my business." He said he never heard her scream.

¶4. Mrs. Donna Hutto, Jane's mother, testified that she found blood on Jane's underwear when she started the wash on Sunday after Jane had returned from Jackie's house. Jane told her she had started her period. She also notice a bruise on Jane's right cheek. Jane did not tell her mother about the rape until the last week of April, at which time Mrs. Hutto went to the police department and filed charges.

¶5. Dr. Kathy Sessums testified that she examined Jane on May 6. She said that Jane's hymen was not intact and there were several lacerations in the vaginal area, consistent with vaginal penetration which had healed.

¶6. The defense presented Virginia Davis, who testified that Amacker slept with her on the night of March 23 and that to her knowledge he didn't get up at any time during the night. She said she didn't hear anything during the night. She also said that Jane fell off a swing and hurt her face that afternoon, but on cross-examination, admitted that she had never told the story of the swing incident before. The defendant took the stand on his own behalf and denied entering the room that night or having any type of sexual contact with Jane Smith.

¶7. On pre-trial motions, the State moved to exclude all testimony relating to Jane's sexual behavior or conduct. Amacker delivered a motion of intent to attack Jane's credibility by presenting two witnesses to testify that Jane was in bed with Chris Poole, and not Amacker. The trial court conducted a hearing, in which all of the witnesses were examined for their testimony.

¶8. Peggy Martone, the mother of two boys staying at the house, testified that her son, Johnny Martone, told her that Chris Poole had gone into Jackie's bedroom. Peggy Martone also told the court that her son had only stayed at the house twice, once several years before, and once on the night of the rape incident. She later stated he may have spent the night twice, "to be on the safe side." Virginia Davis testified that the only time all eight people spent the night together at her house was the night of the incident. She was not sure whether that was either a Friday night or a Saturday night. Jackie Davis testified that because she felt the curly hair of the person in bed with Jane, she knew it was Chris Poole, and told her mother it was Chris.

¶9. After hearing the witnesses offered to attack Jane's credibility, the trial court ruled that Johnny Martone could not specify the date upon which Chris Poole's alleged conduct occurred, and was therefore not able to testify under Miss. Code Ann. § 97-3-68. The trial court also ruled that Jackie's observations of the

person near Jane's bed were speculative, and not necessarily sexual in nature, and also ruled that Jackie could not specify the date on which this incident occurred. When Amacker's counsel inquired as to why he could not ask Jackie as to the curly hair she felt, the trial court responded that the whole observation was speculative, in his mind. As a result, Jackie was not able to testify under Miss. Code Ann. § 97-3-68.

¶10. The jury rendered a verdict of guilty. At sentencing, Amacker admitted that he had been convicted twice before, of forgery and felony burglary. The trial court then sentenced Amacker to life imprisonment as a recidivist, without benefit of parole or early release. Amacker moved for a new trial, assigning error in the trial court's not permitting Jackie or Johnny Martone to testify. The trial court denied the motion.

### III. ANALYSIS

1) DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR BY RESTRICTING AMACKER'S RIGHT TO PRESENT EVIDENCE IN HIS DEFENSE BY EXCLUDING THE TESTIMONY OF JACKIE DAVIS AND JOHNNY MARTONE?

2) DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR BY REFUSING TO ALLOW EVIDENCE OFFERED BY AMACKER TO REBUT THE CONTENTION THAT AMACKER WAS THE SOURCE OF THE VICTIM'S INJURY?

¶11. The State used the notice defense of M.R.E. 412 to support the exclusion of Jackie or Johnny's testimony. Both Jackie and Johnny were excluded from testifying on the grounds that they could not testify as to the date on which the alleged sexual act occurred; and that Jackie's testimony was also barred as speculative, in that she had testified to several versions of this story, all under Miss. Code Ann. § 97-3-68.

¶12. As a result, this analysis is divided into different sections, dealing with (1) the applicability of M.R.E. 412 to this case; (2) the impact, if any, of the fact that the State did not assert M.R.E. 412 at trial; and (3) beyond M.R.E. 412, a discussion of the trial court's ability to bar the testimony of these children for other reasons.

### A) The applicability of M.R.E. 412 under these circumstances.

¶13. M.R.E. 412 controls over any statutory evidence rules, rendering them unenforceable. *Hall v. State*, 539 So. 2d 1338, 1340 (Miss. 1989). Although neither party relied upon M.R.E. 412 at trial, instead utilizing Miss. Code Ann. § 97-3-68 (1994 rev.), both parties agree that M.R.E. 412 is the proper standard. M.R.E. 412 provides, in pertinent portions:

### RULE 412. SEX OFFENSE CASES; RELEVANCE OF

### VICTIM'S PAST BEHAVIOR

**(a)** Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, **reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible**.

**(b)** Notwithstanding any other provision of law, in a criminal case in which a person is accused of a

sexual offense against another person, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

(1) Admitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted; or

(2) Admitted in accordance with subdivision (c) hereof and is evidence of

(A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury; or

. . . .

**(c)** (1) If the person accused of committing a sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior or evidence of past false allegations made by the alleged victim, the accused **shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case**. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

. . . .

**(d)** For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the sexual offense is alleged.

[emphasis added].

¶14. The first question is whether M.R.E. 412(b) applies. M.R.E. 412(b)(2)(A) requires that a defendant who wishes to introduce evidence of "past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury." M.R.E. 412(b)(2)(A). The issue is whether M.R.E. 412(b)(2)(A) applies to exclude the testimony of Jackie Davis and Johnny Martone.

¶15. M.R.E. 412(d) answers the question in this case. M.R.E. 412(d) exempts from the bar against evidence of past sexual behavior "sexual behavior with respect to which the sexual offense is alleged." M.R.E. 412(d); *see also Goodson v. State*, 566 So. 2d 1142, 1150 (Miss. 1990)(plurality). Other courts have interpreted this provision in their own rules to mean that evidence pertaining to the sexual act in question, such as identity, is outside the scope of the rape shield rule. *United States v. Torres*, 937 F.2d 1469, 1472 (9th Cir. 1991), *cert. denied*, 502 U.S. 1037, 112 S. Ct. 886 (1992); *State v. Gettier*, 438 N.W.2d 1, 2-3 (Iowa 1989) (asserting despite Rule 412's inapplicability, trial court could still exclude evidence as more prejudicial than probative).

¶16. Furthermore, courts have stated that the rape shield rule's protections are inapplicable, where "[t]he

act offered in explanation was not a prior "separate incident" but an alternative account of the events of that evening offered to counter the prosecution's medical testimony." ***Commonwealth v. Majorana***, 470 A.2d 80, 85 (Pa. 1983). The ***Majorana*** Court explained that the defendant must have the opportunity to explain the "presence of semen and sperm in the victim's body." 470 A.2d at 85. That court defended its holding on the ground that to do otherwise "would deny appellant the chance to defend by presenting a denial of the prosecution's case." ***Id.***; *see* ***Rock v. Arkansas***, 483 U.S. 44, 56 (1987); *see generally* ***State v. Reinart***, 440 N.W.2d 503, 506 (N.D. 1989). The ***Majorana*** Court directly limited the introduction of such evidence to a time frame "close enough in time to the act with which he is charged that it is relevant to explain the presence of objective signs of intercourse." 470 A.2d at 84. For this reason, two cases, which hold that general evidence of chastity is admissible, while specific evidence relating to an alternative source of injury is not, are overruled by adoption of the Mississippi Rules of Evidence. *See* ***Shay v. State***, 229 Miss. 186, 192-93, 90 So. 2d 209, 211 (1956); ***Barnes v. State***, 164 Miss. 126, 136, 143 So. 475, 477 (1932).

### B) On the merits outside M.R.E. 412, is there justification for striking Jackie Davis and Johnny Martone's testimony?

¶17. As stated above, the trial court struck the testimony of Jackie Davis and Johnny Martone because neither could testify precisely as to what day this incident occurred, and Jackie Davis' inconsistencies in her story made her testimony speculative.

¶18. Neither M.R.E. 412 nor Miss. Code Ann. § 97-3-68 discuss the exclusion of evidence merely because it is speculative, or the witness has an inability to give the calendar date of the incident. However, since both Johnny Martone and Jackie Martone are children, the trial court does have the ability to exclude their testimony as incompetent, under an abuse of discretion standard. ***Mohr v. State***, 584 So. 2d 426, 431 (Miss. 1991); ***King v. State***, 374 So. 2d 808, 812 (Miss. 1979), ***cert. denied***, 445 U.S. 917, 100 S. Ct. 1279, 63 L. Ed. 2d 602 (1980). In ***King***, this Court affirmed the trial court's rejection of a child witness, based upon the fact that the child could not tell the court when his birthday was. ***King***, 374 So. 2d at 812. However, other states which have reviewed cases in which the child could not remember the date of the incident, which is the question here, have stated that this problem goes to the credibility, and not the absolute competence, of the witness. ***People v. Gillispie***, 767 P.2d 778, 781 (Colo. Ct. App. 1988); ***State v. Rogers***, 692 P.2d 2, 5 (Mont. 1984). Applying the principle of these cases to Johnny Martone's inability to give the date of the incident, the trial court judge abused his discretion by refusing to admit Johnny's testimony.

¶19. As for Jackie Davis, her inability to testify as to the exact date of the incident similarly goes to credibility.[(2)] ***Gillispie***, 767 P.2d at 781. However, the trial judge would not allow her to testify as to a person with curly hair being in the room with Jane Smith and herself, because it was speculative. It would be speculative for Jackie to testify as to whom was in the room, based upon her only identification being a boy with curly hair.[(3)] However, Jackie could testify that a boy with curly hair was in the room, as she obtained that information directly from her sense of touch. That testimony was not speculative. ***Perkins v. State***, 290 So. 2d 597, 599 (Miss. 1969).

¶20. In conclusion, the trial court erred by not admitting Johnny Martone's testimony, and by not admitting Jackie Davis' testimony about a person with curly hair near Jane Smith in Jackie's bedroom during the time of the incident. However, the trial court was correct in not allowing Jackie to testify that the person was

Chris Poole.

## IV. CONCLUSION

¶21. M.R.E. 412 did not apply in this case, as conflicting evidence of who actually caused the injury during the incident in question is outside the scope of the rape shield rule, under M.R.E. 412(d). On the merits outside the rape shield rule, the trial court was incorrect in excluding Johnny Martone's testimony and Jackie Davis' testimony on the grounds that they could not specify the date in question. *Gillespie*, 767 P.2d at 781. Furthermore, the trial court was incorrect in refusing to allow Jackie Davis to at least state that Jane Smith was with a boy with curly hair during the time of the incident. *Perkins*, 290 So. 2d at 599. However, the trial court was correct in not allowing Jackie Davis to identify a specific person from her testimony, since it was too vague to be accurate, and there was evidence of a corrupting influence to her identification. *Hansen*, 592 So. 2d at 138; *Manotas-Mejia*, 824 F.2d at 369.

¶22. **REVERSED AND REMANDED FOR A NEW TRIAL.**

**LEE, C.J., SULLIVAN, P.J., BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PITTMAN AND MILLS, JJ., NOT PARTICIPATING.**


### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶23. Although I agree the trial court erroneously refused to admit the testimonies of Johnny Martone and Jackie Davis, the question regarding Davis' "vague" identification of a specific person is a credibility issue which should not be resolved by this Court. Whether the identification by Davis was corrupted or too vague to be accurate is an issue of credibilty which should be resolved by the jury after Davis is permitted to testify regarding the incident in question. The accuracy of her testimony would be more effectively explored and ascertained on cross-examination than at the appellate level.

1. The names of the minor children have been changed to protect their anonymity.

2. This point is particularly valid when testimony established that the only time all the witnesses (Johnny Martone, Amacker, Jackie Davis, and Jane Smith) were in the Virginia Davis home was when the incident occurred.

3. Courts have stated that certain factors are important in determining whether an identification is reliable and admissible. *Hansen v. State*, 592 So. 2d 114, 138 (Miss. 1991), *cert. denied*, 504 U.S. 921 (1992) . These factors include the opportunity for the witness to see the offender during the time of the criminal act; the "witness's degree of attention;" the "accuracy of the witness's prior description of the criminal;" the "level of certainty demonstrated by the witnesses at the confrontation," and "the length of time between the crime and the confrontation." *Hansen*, 592 So. 2d at 138. The Fifth Circuit added a factor of the presence of a "corrupting influence of suggestive identification." *United States v. Manotas-Mejia*, 824 F.2d 360, 369 (5th Cir.), *cert. denied sub nom, Ramirez-Rios v. United States*, 484 U.S. 957 (1987). Under these circumstances, where Jackie knew only the identity of the person from his "curly" hair, and where there was

evidence that Jackie's mother coached her testimony, her identification of Chris Poole was unreliable and inadmissible.