## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-00581-SCT

*DAVID HERRINGTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/93 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MERRIDA COXWELL |
| | CHARLES R. MULLINS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | FORTENBERRY, DEWITT L., JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 1/30/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/20/97 |

### BEFORE PRATHER P.J., ROBERTS AND MILLS, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. David Herrington was convicted by a Simpson County jury of the capital rape of a twelve-year-old female. The trial court sentenced him to life in prison. From this conviction and sentence Herrington appeals. This Court reverses and remands for a new trial.

### FACTS

¶2. On June 6, 1992, M.S., a twelve-year-old girl, was at home in the mid-afternoon with her stepfather, David Herrington. Herrington is married to the non-custodial mother of M.S. M.S. went into a bedroom to check on her infant half-sister. Herrington entered the room. According to M.S., Herrington pushed her down on the bed and fondled her breasts. Herrington then pulled his pants partially down and inserted his penis in her vagina. After the incident, M.S. went to the bathroom to clean herself. She testified she saw no blood, but that she saw white, sticky stuff. M.S. testified at trial that she was a virgin before June 6, 1992. She further testified that the next day that (1) she told her cousin of the event[1] and, (2) she was spotting from what she thought was menstruation.

¶3. M.S. did not report the rape until July 28, 1992, when she told her grandmother of the incident. On August 14, 1992, Dr. Harriette Hampton examined M.S. and found two lacerations, which were at least two weeks old. The doctor testified that these lacerations were more likely to occur with forced penetration than in consensual relations and that bleeding would be expected at the time of the injury.

¶4. Unknown to the jury, the defense proffered the testimony of Maxine McMillan, the victim's friend. McMillan related the following:

Q. Do y'all live close to [M.S.]'s grandmother?

A. Right behind her.

Q. Do you know [M.S.]?

A. Yes, sir. I know her.

Q. Has she been there to visit with her Grandmother on occasions when you have seen her there?

A. Yes, sir.

Q. Okay. I'm going to call your attention to the early part of July of 1992, and ask you if you remember seeing [M.S.] there about that time?

A. Yes, sir. It was sometime in July.

THE COURT:

Speak up a little bit, please, a little louder.

Q. Sometime in July?

A. Yes, sir.

Q. Was it after July the 4th?

A. Yes, sir. I believe so.

Q. Did you and did [M.S.] go to the trailer there?

A. Sir?

Q. -- on that day? Did [M.S.] go to a trailer there that day, mobile home?

A. Yes, sir. She went to my house.

Q. Do you live in a mobile home there?

A. Yes, sir.

Q. All right. And did [M.S.] stay there some time in the mobile home?

A. Yes, sir.

Q. Was -- there anyone else there at the time?

A. Uh-huh. It was me, my sister, [M.S.], and Amanda, me and Charles Kelly and Bobby Rachcliff.

Q. What, if anything, did [M.S.] do there that day?

A. Sir?

Q. What, if anything, did [M.S.] do that day there?

A. Well, all of us was sitting around. We were going to go to the game room. And me, Amanda and [M.S.] left and went to the game room and left my sister there. And then we come back, and my sister went to the game room. And we was all sitting outside talking and stuff, and I asked him how old was he -- you know -- I thought he was about eighteen --

Q. Who were you talking to?

A. Charles Kelly.

Q. Okay.

A. And he said -- there was a bet made -- he said that he was under eighteen. He said that if I lost it, he was going to sleep with me, and then me and [M.S.] was sitting on the car and she -- she told -- she whispered in my ear and said, "Well, I want to be with him." And then her and Charles went in the trailer.

Q. Who said that?

A. [M.S.].

Q. Okay.

A. And then her and Charles went in the trailer and me and Bobby Rachcliff went behind. They went in the room and shut the door, and me and Bobby sat in the living room and watched T.V. and talked. And when they come back out, we went to -- they carried us to the game room. And then she went to the bathroom and she was bleeding. And she come back out and told me she was bleeding, and I gave her a pad.

Q. Was this at the game room?

A. Yes, sir, when she said she was bleeding.

Q. Is the game room where the trailer is or is it uptown?

A. No, sir. It's up the road.

Q. Okay.

A. It's in town.

Q. All right. Did she complain to you at the game room, when she said she was bleeding, did she complain to you that she was hurting anywhere?

A. Well, she told me she was hurting, you know, in her -- in her bottom part -- you know -- that's all she said, I'm hurting and I'm bleeding, that's all she said.

Q. Okay. Was she hurting -- did she indicate to you she was hurting in her pubic area; was that what she was talking about?

A. Yes, sir.

Q. All right. Did she say at that time what caused her to have the hurting?

A. No, sir.

The Court did not allow this testimony to be offered in evidence.

## LAW

## I.

**Did the trial judge commit reversible error by refusing to allow evidence offered by Herrington to rebut the contention that Herrington was the source of the victim's injury?**

¶5. The defendant alleges that the trial court erred in not allowing the defendant to prove he was not the source of the injury, but rather that Charles Kelly was. The trial court ruled that "[I do not] see that the evidence showing opportunity or the testimony of Maxine McMillan was sufficient to characterize this as an incident of sexual behavior. . . ." Mississippi Rule of Evidence (M.R.E.) 412, in relevant part states:

**(a)** Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible.

**(b)** Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

(1) Admitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted; or

(2) Admitted in accordance with subdivision (c) hereof and is evidence of

(A) **Past sexual behavior with persons other than the accused, offered by the accused**

**upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury**; or

. . . .

**(c)** (1) If the person accused of committing a sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior or evidence of past false allegations made by the alleged victim, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

. . . .

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the sexual offense is alleged.

¶6. In three cases this Court has held that it was reversible error to disallow similar evidence that defendants' sought to introduce under our Rape Shield Rule.

¶7. Most recently, in *Amacker v. State*, 676 So. 2d 909 (Miss. 1996), the defendant offered proof that the victim had sex with another male on the same night. The trial court ruled that the witnesses' observations of the person near the victim's bed were: speculative; not necessarily sexual in nature; and not specific as to the date. *Amacker,* 676 So. 2d at 910 . The trial court disallowed the evidence. *Id.* This Court reversed, stating in an 6-1 decision, that "who actually caused the injury during the incident in question is outside the scope of the rape shield rule." *Id.* at 10. The only distinction between *Amacker* and this case is that in the case *sub judice* the alleged source of the injury occurred one month after the State would prove the date of injury. This distinction is without meaning as this Court stated "the rape shield rule's protections are inapplicable, where '[t]he act offered in explanation was not a prior separate incident but an alternative account of the events of that evening offered to counter the prosecution's medical testimony.'" *Id*. at 8; (quoting *Commonwealth v. Majorana*, 470 A.2d 80, 85 (Pa. 1983)).

¶8. The prejudice to the defendant due to the inability to counter the argument that Herrington was the source of the injury is shown in closing arguments:

**CLOSING ARGUMENT BY PROSECUTOR:**

Now, I want to leave you with a real important thought here. Okay? Now, the Defendant said, "I didn't do it. It wasn't me. I didn't rape her." [M.S.] says he did. Now, there's one fact that cannot be escaped. There is one fact that cannot be escaped. That is this. [M.S.] had two lacerations inside her vagina that were put there by forceful sexual penetration, and you can't escape that. **So, for you to find this Defendant not guilty, what you've got to find is that somebody else did it. Okay?** There's no question that it happened. There's no question that

some type of sexually forceful penetration did occur. That's a fact. The doctor said there's no other way for it to get there. You see, that's the key point. The Defendant can come in here and make all kinds of explanations and all of kinds of guesses and all kinds of -- but he can't get around that, can he? He can't get around those lacerations. You see, they're there and always will be. And that was the tell[tale] thing that he couldn't keep. He would've loved for those lacerations to go away because then it would just be his word against her word, a thirty-year-old against a little twelve-year-old.

. . . .

**CLOSING ARGUMENT BY DEFENSE:**

. . . .

Ladies and Gentlemen, Mr. Webb asked you the question did somebody else cause these lacerations on [M.S.] **I'll tell you that I can't go into that matter. So, all I'm saying is that it didn't happen the way they said it happened here.** I'm not permitted to inquire into whether somebody else did it or not, neither is he in this case, but we're saying that it didn't happen here and it couldn't have happened here because there was no blood. The evidence is inconsistent and it just doesn't tie in.

. . . .

**REBUTTAL CLOSING BY PROSECUTION:**

. . . .

**And, also, if this was fabricated, how would the lacerations have gotten there. That's fact. If you are going to fabricate a story, how do you fabricate the lacerations?**

(Emphasis added.)

¶9. Another similar case is *Heflin v. State*, 643 So. 2d 512 (Miss. 1994). There, this Court reversed and remanded for a new trial where the trial court erred in disallowing the defendant's relevant evidence showing another source of the semen. *Heflin*, 643 So. 2d at 520. The evidence in question revealed that the victim had sexual intercourse with her boyfriend the weekend before the rape occurred and that seminal fluid from her bathing suit, worn the last time she was with her boyfriend, matched that of the boyfriend as well as the defendant. *Id.* at 515-16. Medical testimony suggested that "intact nonmotile sperm" could be found within the 105-hour period since the victim and her boyfriend were on their last date. *Id.* Therefore, the boyfriend could have been the source of the sperm. *Id.*

¶10. The final case in this unbroken string is *Goodson v. State*, 566 So. 2d 1142, 1152 (Miss. 1990). This Court held that evidence that a child victim's hymen was not intact justifies admission of evidence of prior sexual conduct to show that the accused was not the cause of the injury. *Id.* at 1148.

¶11. In reply, the State argues that the lack of proof of sexual activity makes this evidence fall outside

the exception of Rule 412(b)(2)(A). This Court has never held that to be admissible the defendant must introduce direct proof of sexual activity to prove another source of the injury. It bears saying, despite the prosecutor's closing statement to the contrary, that there is no burden on the defendant to prove anything, much less that another person did the act. Such evidence, however, is certain to help his case. "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. The fact that the victim, after hearing a teenager plans to "sleep" with her friend on a bet, says she then wants to "be with him," spends time alone in a room with him, and exits complaining of vaginal pain and bleeding is relevant to whether the incident is the source of her vaginal lacerations. This incident, if the jury should believe Ms. McMillan, places the victim's time of injury anywhere from two to five weeks prior to M.S.'s medical examination. This is consistent with Dr. Hampton's testimony of the age of the injury.

¶12. The State next argues that the evidence is more prejudicial than probative because of factual uncertainties. Factual uncertainties are matters of credibility for the jury to decide. Finally, the State asserts that the defendant did not timely file his motion to introduce this evidence. The record reveals that Herrington filed the motion eleven days before trial instead of the fifteen required by Rule 412(c). Thus, Herrington filed the motion four days late. However, as Herrington aptly points out, the State **never** filed a motion to strike on the basis of untimeliness at the pre-trial hearing or the trial itself. Thus, the State has waived its objection. The prosecution's failure to object bars this Court from addressing this contention on appeal. The trial court's ruling was in error and, in effect, prevented the defendant from putting on a defense amounting to anything more than a denial. This cause must be reversed for a new trial.

## II.

### Did the trial judge err by giving a modified *Allen* charge?

¶13. During closing argument by the defense, tornado warning sirens sounded. The police radio log, introduced without objection, shows this occurred at 4:45 p.m. The alarms were deactivated at 5:00 p.m. The jury retired to deliberate at 5:05 p.m. At 5:25 p.m., the tornado alarm was again activated, to be deactivated at 5:43 p.m. At 6:37 p.m. the jury returned in a deadlock. The trial judge read a modified *Allen* charge [(2)] very similar to the one this Court recently unanimously condemned in *Bolton v. State*, 643 So. 2d 942 (Miss. 1994). The defense objected to the reading of this instruction because "it puts too much pressure on the jury to surrender any reasonable doubt they might have." The defense renewed its objection in its motion for a new trial.

¶14. This Court has for twenty years held that any deviation from the approved *Sharplin* charge is reversible error. *Bolton v. State*, 643 So. 2d 942 (Miss. 1994); *Brantley v. State*, 610 So. 2d 1139 (Miss. 1992); *Edlin v. State*, 523 So. 2d 42 (Miss. 1988); *Murphy v. State*, 426 So. 2d 786 (Miss. 1983); *Coleman v. State*, 350 So. 2d 55 (Miss. 1977); *Sharplin v. State*, 330 So. 2d 591 (Miss. 1976). Moreover, this Court forbade state trial courts from using an *Allen* charge in any of its various forms. This unbroken line of cases represents a longstanding bright line rule for this Court.

¶15. In response, the State renews its request that this Court overrule *Sharplin*, and its progeny to the extent necessary to adopt the Fifth Circuit's "*Allen* Charge." The State argues that we should

review each variation from the approved *Sharplin* instruction on a case-by- case basis. The State further suggests that this Court could review each case upon the totality of the circumstances to determine if the challenged instruction was coercive.

¶16. This Court has continually rejected the same argument and will not overrule this principled line of cases. Moreover, the fact that tornado sirens were blaring during the jury's deliberations makes this case an unfavorable candidate to adopt any change in the Court's jurisprudence. That is, even if the Court were to accept the recommendation of the State, the bad weather likely pressured the jury's analysis as did the instruction, a combination forcing the jury to reach a snap judgment in order to get home to make sure all was well with their property and loved ones. The reading of the improper *Allen* charge was reversible error *per se* as it has been for twenty years.

## III.

**Is the verdict against the overwhelming weight of the evidence, or alternatively, does cumulative error in the trial of this case demand a new trial?**

¶17. A trial court may not overturn a jury verdict and order a new trial unless it concludes that the verdict was against the overwhelming weight of the evidence, and that an unconscionable injustice would otherwise result. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). The court on written motion of the defendant may grant a new trial on any of the following grounds:

> 4. If the jury has received any evidence, papers or documents, not authorized by the court, or the court has admitted illegal testimony, or **excluded competent and legal testimony**;
>
> . . . .
>
> 6. If **the court has misdirected the jury in a material matter of law**, or has failed to instruct the jury upon all questions of law necessary for their guidance.

U.R.C.C.C. 5.16 (emphasis added).

¶18. On appeal, the decision of the lower court is examined to determine whether there was an abuse of discretion. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984).

¶19. Having recommended that the trial court erred in disallowing evidence concerning source of the injury and in misdirecting the jury by giving an improper *Allen* charge, we must necessarily conclude that the trial judge abused his discretion in not granting Herrington's motion for a new trial.

## IV.

**Did the trial court err in denying a motion for a mistrial when a witness testified Herrington beat his wife?**

¶20. During the testimony of M.S., the following exchange took place:

> Q: Why did you tell her then?

A: Because my cousin, Amanda, kept egging it on, and that we had brought up the subject -- well -- the subject had been brought up about David. We had heard David had been beating my mother, and --

DEFENSE COUNSEL:

We are going to object to that, Your Honor, and move to strike.

THE COURT:

Sustained.

DEFENSE COUNSEL:

And ask that the jury be instructed.

THE COURT:

Ladies and Gentlemen, you will disregard the last answer.

The direct examination then continued. At the point the witness was tendered for cross- examination, defense counsel asked the trial court to excuse the jury for a motion. When the jury was excused, defense counsel moved for a mistrial based on the statement of M.S. The motion was overruled. The trial court offered to further instruct the jury, if requested. The defense stated he was of the opinion it would be best not to belabor the point further.

¶21. Initially the State argues that the motion for mistrial is not contemporaneous, and thus the defendant is barred from raising this issue on appeal. *Meena v. Wilburn*, 603 So. 2d 866, 873 (Miss. 1992).

> Of utmost importance, a judge can only make a determination of prejudice if the defendant makes a timely objection and motion for a mistrial. Strictly speaking, timeliness means the objection and motion must be made contemporaneously with the allegedly improper utterance. This is well-known as the "contemporaneous objection rule." **Contemporaneousness is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance.**

*Id.* (emphasis added).

¶22. Here the reason behind the procedural bar does not obtain. The jury had already been instructed to disregard the evidence of other crimes. This Court recognizes that errors by trial courts in admitting evidence of crimes not charged may be cured through instructions to the jury. *Shoemaker v. State*, 502 So. 2d 1193, 1195 (Miss. 1987). We presume that jurors follow the trial judge's instructions. *Id.* The issue is not barred by a short wait until direct examination is complete. No abuse of the judge's discretion occurred for failure to grant a new trial on this issue due to the fact the court instructed the jury to disregard the improper evidence.

**V.**

**Did the trial court err in not excusing a juror for failing to reveal her children went to school with the victim?**

¶23. A juror, Ms. Griffin, informed the court that her children had talked about the case at the dinner table at home. Ms. Griffin related this story after the close of evidence, but before closing arguments. Ms. Griffin stated that one of her children stated that "M.S. was not at school today." Her other child replied, "Well, she must be in Court." Having heard this, Ms. Griffin immediately left the table and went to the bathroom. Her husband came back to the bathroom and asked if she was okay and was this her case. Ms. Griffin replied "yes" to both questions. Her husband then left and a few minutes later told her she could come back out. Ms. Griffin stated that she did not tell the kids she was on the jury, nor did she want them to know. Her husband did not tell her what, if anything, her kids said after that. Ms. Griffin stated that her judgment would not be affected by the fact her children were in school with the defendant. She further stated that "yesterday it did not even cross my mind that she was in school with them."

¶24. During voir dire, the prospective jurors were asked if **they** knew M.S . Ms. Griffin did not reply.

¶25. Both parties agree that the ability to dismiss a juror is within the discretion of the trial judge. *Scott v. Ball*, 595 So. 2d 848, 849 (Miss. 1992); *Myers v. State*, 565 So. 2d 554, 558 (Miss. 1990). Here it would appear that this discretion was not abused. It was entirely consistent for Ms. Griffin to answer that she did not know M.S. She stated that she was unaware that her children went to school with M.S. until her children brought that to her attention. Trial counsel never asked the venire if anyone had children who attended a particular school. Thus, there is no material misrepresentation. *Myers*, 565 So. 2d at 558. This issue is without merit.

## VI.

**Did the trial court err in allowing a witness to be impeached by a chancery court order to which Herrington was not a party?**

¶26. On cross-examination, M.S.'s mother testified as follows:

Q: Mrs. Herrington, were you aware that for [M.S.] to be in your house, David Herrington's house, and in David Herrington's presence was in violation of a Chancery Court Order.

A: Yes.

DEFENSE COUNSEL:

To which we object your honor.

THE COURT:

Yes, sir. The objection is noted and overruled.[3]

Q: I'm sorry. I didn't hear the answer.

A: Yes.

Q: Subsequent to June 6th, 1992, did you ask [M.S.] to lie about where she spent the night that night so you wouldn't get in trouble?

A: No.

Q: But you are aware that for [M.S.] to ever be in David Herrington's presence was in violation of that court order?

A: Yes.

¶27. Earlier on cross-examination, defense counsel elicited from M.S. that she had lied about spending the night at her mother's house. M.S. admitted she had lied. She explained, "It was to protect -- to keep my mamma from getting in trouble."

¶28. On appeal the defendant alleges the chancery court order was used to improperly impeach M.S.'s mother because: (1) there was no inconsistent prior statement; (2) the matter was immaterial; and (3) the risk that the order would be used as evidence of other bad acts in violation of M.R.E. 404(b), when David Herrington was not a party to the chancery court proceeding out of which the order was drawn. The State argues that this evidence was used to show bias of the witness in accord with M.R.E. 616 to show a lack of credibility on the part of M.S.'s mother.

¶29. M.S.testified she lied to protect her mother. M.S.'s mother denied telling her daughter to lie. The chancery court order was valuable evidence to be considered in assessing M.S.'s mother's credibility as to whether she told her daughter to lie about visiting her house and was therefore admissible. This issue is without merit.

## CONCLUSION

¶30. The trial court abused its discretion in refusing evidence that another person was the source of the victim's injury. Further the trial court improperly coerced the jury during their deliberations when it read an improper modified *Allen* charge. The case must be reversed and remanded for a new trial.

¶31. **REVERSED AND REMANDED FOR A NEW TRIAL.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. The statement of the victim that she told her cousin of the incident was neither corroborated nor objected to.

2. The trial judge read the following instruction to the jury.

I'm going to ask you that you continue deliberations in an effort to agree upon a verdict and dispose of this case. I have a few additional comments I would like for you to consider as you do so. Any future jury must be selected in the same manner as you have been chosen and from the same source, and there is no reason to believe that the case could ever be submitted to

twelve men and women more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced. If a substantial majority of your number are for conviction, either -- each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought to seriously ask themselves again, and more thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of evidence which fails to convince several other jurors beyond a reasonable doubt. Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence; but remember also that after full deliberation and consideration of the evidence in this case, it is your duty to agree upon a verdict, if you can do so without surrendering your conscientious conviction. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty. You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary. I will ask you to retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the other instructions I have previously given you.

3. The defendant filed a motion in limine concerning this subject. Considerable debate ensued over the scope of the use of this Order. During a proffer immediately preceding this testimony the trial court ruled, "I'm going to let you ask those three questions along [this] line, but only those three , and the Order will not be admitted. (T. 259).