767 So.2d 246 (2000)
William BURROUGHS a/k/a William Burroughs, IV a/k/a `Buck', Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00436-COA.
Court of Appeals of Mississippi.
May 30, 2000.
*248 William B. Kirksey, Merrida Coxwell, Charles Richard Mullins, Jackson, Attorneys for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
IRVING, J., for the Court:
¶ 1. William Burroughs, IV, a/k/a "Buck", was convicted of two counts of aggravated assault and two counts of simple assault in the Circuit Court of Bolivar County and was sentenced to serve fifteen years on the aggravated assault charges with five years suspended after service of ten years in the custody of Mississippi Department of Corrections. He was sentenced to serve six months on the simple assault convictions with the sentences to run concurrently with the sentences imposed on the aggravated assault convictions. He appeals those convictions and sentences and assigns as error the following issues which are taken verbatim from his brief:
I. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FORBIDDING THE DEFENSE FROM ELICITING TESTIMONY THAT THE PIKES REFERRED TO THE LOCAL MEN AS GDI; THE TRIAL JUDGE ALSO ERRED BY EXCLUDING TESTIMONY THAT THE PIKES WERE ON PROBATION.
II. THE TRIAL JUDGE ERRED BY NOT ORDERING A NEW TRIAL AFTER IT WAS DISCOVERED THAT TWO OF THE VICTIMS WORKED FOR ONE OF THE JURORS.
III. THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS. IN THE ALTERNATIVE, THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding error, we reverse and remand.

Facts
¶ 2. During the early morning hours of January 21, 1996, Scotty Harrison and Burroughs, by pre-arrangement, drove to Treeline Road in Bolivar County to rendezvous with Jay Weaver, a student at Delta State University, and other members of Weaver's college fraternity known as "Pikes".
¶ 3. During the evening of January 20, Harrison and Weaver had been involved in a barroom brawl at a local nightclub. Weaver had phoned Harrison following the altercation with a challenge to meet on Treeline Road to settle the prior dispute. Harrison accepted the challenge. Harrison then phoned Burroughs and asked Burroughs to accompany him. Burroughs and Harrison rode together in Burroughs's car. They were the first to arrive at the meeting place. It was approximately 3:00 a.m. A .270 rifle and a .44 Magnum pistol, both belonging to Burroughs, were in the car. Both Harrison and Burroughs exited the car.
¶ 4. A short time later a Toyota truck occupied by A. J. Willen, Brian Johnson, Jeremy Dyess, and Kevin Wooten arrived at the Treeline Road location. Another group of Pikes followed in a Jeep Cherokee. Shots were fired. Willen was struck in the arm and knee by one bullet, and another bullet grazed Johnson's back. Dyess and Wooten were not injured. Both vehicles left the scene immediately following the shooting.
¶ 5. Both Harrison and Burroughs admit firing weapons at the time but claim that the Pikes fired weapons first. Harrison claims to have fired the .44 Magnum into the air. The Pikes claimed that none of them were in possession of any weapons.
¶ 6. Billy Joe Estes, chief investigator with the Bolivar County Sheriffs Office, testified that he took a statement from *249 Burroughs the next morning which was recorded on audiotape and transcribed. Burroughs signed the transcript of the tape. The original audiotape was played in the presence of the jury and reflects that Burroughs admitted he fired a .270 rifle "down the road" at the time and location of the incident.

Analysis of Issues Presented

I. Exclusion of testimony
¶ 7. The standard of review regarding admission or exclusion of evidence is abuse of discretion. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party. In re Estate of Mask, 703 So.2d 852, 859 (Miss.1997); Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss. 1995).
¶ 8. Burroughs alleges that it was reversible error for the trial court to exclude evidence that would have allowed him to establish the Pikes' motive to lie about being in possession of a weapon or weapons. Burroughs alleges the motive was that the fraternity was on probation for past misconduct and that an admission by some of its members that they were in possession of firearms in violation of university policy would have resulted in its charter being revoked. He also alleges that it was reversible error for the trial court to exclude evidence which would have established the Pikes' animosity toward non-fraternity students. Burroughs claims that the Pike fraternity chapter located at Delta State University had obvious disdain for the local young men of Cleveland who were not college attendees as evidenced by the fact that the Pikes referred to the locals as "GDIs", which means "g___d___ independents."
¶ 9. In making its decision to exclude the testimony the lower court ruled as follows:
BY THE COURT: All right. Well, the Court will allow you to introduce all matters that are relevant and pertinent to this particular incident, but the Court does not deem the fact that that fraternity may have been on probation to be a probative value in this particular case. If it had been the other way around, I could see the defense arguing the prejudicial affect is outweighed by any probative value that there may be. And as we have already told the jurors, we have to be fair to the State as well as being fair to the defense. So the Court is going to disallow the usage of the term "GDI" and the allegation that the fraternity was on probation.
¶ 10. It is apparent that the lower court found that the Pikes' probation and apparent disdain for the locals had no probative value with regard to the material facts to be proven in this case. This Court agrees. Burroughs contends that the phrase GDI was crucial to his defense in that if the jury had been allowed to hear evidence of the Pikes's animosity toward the local noncollege young men, "then a reasonable juror could easily infer how and why the Pikes would flavor their testimony against Scotty Harrison and Mr. Burroughs." The trial judge's ruling, claims Burroughs, crippled his defense. He argues that this was evidence which could effect a witness's credibility and show bias or ill-will and must be allowed. He cites Myers v. State, 296 So.2d 695, 700 (Miss.1974):
The right of confrontation and cross-examination is not satisfied by a witness submitting himself to token interrogation but extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.
¶ 11. As the State's brief points out, the fact that the Pikes, in general, may have referred to the locals as GDIs is not probative with respect to the feelings of each individual member of the fraternal brotherhood. It was the credibility of the individual *250 victims who were going to testify that was relevant and not the credibility of the Pikes, in general, as a fraternal organization.
¶ 12. Burroughs also cites Miskelley v. State, 480 So.2d 1104 (Miss.1985). Miskelley was on trial for the murder of Steve Brown. State's witness Tammy Nance had dated both Miskelley and the murder victim. According to Nance, after Brown disappeared Miskelley confessed to the murder. Miskelley attempted to bring out the fact on cross-examination that he had a sexual relationship with Nance and that the only reason he made the incriminating statements to Nance was because of her "coaxing, over persuasion and threats to deny [him] sexual favors." Id. at 1109. The trial judge refused to allow Miskelley to cross-examine Nance regarding her sexual relationship with Miskelley. Miskelley was convicted. On appeal, his conviction was reversed on the ground that the lower court unduly restricted cross-examination and impeachment on matters that were crucial on the issue of the confession allegedly made to Nance.
¶ 13. We find a clear distinction between Miskelley and the case at bar. Nance offered testimony that went directly to the guilt or innocence of Miskelley. It was crucial that the jury be given every opportunity to determine the truth and veracity of the witness on this issue, for if the jury accepted her testimony as the truth, conviction was inevitable. Evidence of any ill-will or motive to lie was clearly relevant. In the case at bar, the question of whether the Pike fraternity had a habit of referring to local non-college young men as GDIs and that the fraternity was on probation had no probative value whatever on the issue of whether Burroughs shot and injured someone or whether the victim witnesses had a motive to lie.
¶ 14. Burroughs also cites the cases of Manning v. State, 726 So.2d 1152 (Miss. 1998) and Sanders v. State, 352 So.2d 822 (Miss.1977). In Manning the State was permitted to cross-examine a defense witness about prior juvenile adjudications to demonstrate his bias toward the criminal justice system and to show his motive for testifying for the defendant. Burroughs contends that if a witness's bias toward the criminal justice system is a proper ground for impeachment, then the attitude of the Pike fraternity toward locals and the probationary status of the fraternity should certainly be relevant. In Sanders the defendant, a former deputy sheriff, was on trial for armed robbery. The State's chief witness, Gowan, was the alleged accomplice. Sanders sought to show Gowan's motive to lie by bringing out a past incident where the defendant arrested Gowan. The trial court denied the request. On appeal, the Mississippi Supreme Court reversed, agreeing with Sanders that the evidence was material on the question of the alleged motive of Gowan in testifying against Sanders. Similarly, argues Burroughs, whether Pike fraternity members had a motive to lie during his trial was material.
¶ 15. We find that the clear distinction between the cases cited by Burroughs and the case sub judice is that the evidence of bias and motive to lie were personal to the individual witnesses in those cases and against the individual defendant in each of those cases. Burroughs seeks to invest each and every member of the Pike fraternity with a bias and motive to lie simply by virtue of their membership in the fraternity without regard to any individual member's motive to lie or attitude towards Burroughs the individual. We agree with the lower court that this would not have been proper. There was no abuse of discretion. This issue has no merit.

II. The juror question
¶ 16. Mr. Hannaford and the other prospective jurors were asked a series of questions in voir dire concerning their knowledge of the witnesses. The court called the names of all witnesses including, Jeremy Dyess and the other victims, then asked the following:

*251 Ladies and gentlemen, is there anything about your knowledge of or your acquaintance with either of the parties in this case or witnesses or the attorneys whether it's a matter of like or one of dislike or whether it arises from friendship, personal association, business association, fraternal association or otherwise that will make it difficult or embarrassing for you to serve as a juror in this case?
The State asked the following question: Does (sic) any of you know any of the young people, the witnesses who stood up here?
¶ 17. Mr. Hannaford did not respond to either of these questions. After the case was concluded, Burrough's counsel learned that juror Robert Hannaford had previously employed two of the assault victims, Jeremy Dyess and an unidentified victim. In their post-trial motion for a new trial or in the alternative, JNOV, Burrough's counsel requested an inquiry into whether an employment relationship had ever existed between juror Hannaford and any of the victims. At the hearing on the motion, the following questioning took place:
BY THE COURT: And, of course, I'm referring in particular to the case involving the State of Mississippi versus William T. Burroughs IV. Did you know the victim, Jeremy Dyess?
BY JUROR HANNAFORD: Two boys worked part time at the Ford place and I can't rememberwe worked a lot of Delta State students. I believe one of them worked in the parts room and another one, I can't call his name, worked asthese were part-time people. The other one delivered cars, washed cars but I can't remember his name.
BY THE COURT: Okay. Did you know that Jeremy Dyess worked at Hannaford Ford at the time of the shooting incident?
BY JUROR HANNAFORD: I wasn't aware of anything other than when I was on the stand, when you put me in the jury box, and I can't recall the boy's name, justthe one that owned the truck, what was his name?
BY DEFENDANT BURROUGHS: Jeremy Dyess.
BY JUROR HANNAFORD: The boy that owned the truck, he wasn't there. The other boy, I recognized him when he walked in front of the jury box. He had changed his hair. It was cut round, and I didn't recognize him until he walked into the, you know, as a witness, but the first thing, I could be fair. That's what you had asked me and I could be fair and
BY THE COURT: Okay. Did you know this at the time of the voir dire by the Court on the 18th day of November, 1996?
BY JUROR HANNAFORD: No, sir, I wasn't aware of it until I was put in the jury box.
BY THE COURT: Did you fail to raise your hand when I asked if you knew any of the witnesses?
BY JUROR HANNAFORD: I didn't know the witnesses. I didn't recognize them, sir.
BY THE COURT: Yes, sir. Thanks for those responses. There may be a few more. Let me ask that you step outside for a second or two and then we'll have you come back in, if you don't mind.
¶ 18. At this point the juror exited the judge's chamber and the court entertained arguments from counsel. Hannaford was brought back into chambers and was questioned by the court as follows:
BY THE COURT: Mr. Hannaford, the Court understood you to say that you didn't know the boys' names, that you recognized one of them. I think you said you recognized the one that drove a truck.
BY JUROR HANNAFORD: No, sir. I said I recognized when hethey came in from the far corner and stood up *252 there and I didn't recognize any of them, I guess because the witnesses and then when he walked in front of the jury box to get in the witness stand, I recognized he had worked part time at the Ford place.

BY THE COURT: Okay. Do you draw a distinction recognizing an individual and knowing an individual?
BY JUROR HANNAFORD: I knew of them. We have a lot of part-time Delta State students come and go. As far as keeping up with them and remembering their names and stuff, we have just numerous. They come, drive cars for us, pick up cars, wash cars, deliver cars. I can't remember their names.
BY THE COURT: Okay. This person that you say you recognize, of course, I'm going
BY JUROR HANNAFORD: I can't call his name but I did recognize because he had changed his hair style and I don't know what you call it, but they had it so it kind ofwhat kind of hair style they call that? Well, whatever they call it, they'd cut his hair and I didn't recognize him because he had lost a lot of weight and when he got around there I saw who he was, but I didn't recognize him.
BY THE COURT: Apparently, you have seen him before or say you recognize him?
BY JUROR HANNAFORD: Oh, yes, sir, he had worked at the place.
BY THE COURT: Did you know that individual? Did you know him as an individual?
BY JUROR HANNAFORD: Yes, I knew him as a man, but I didn'tas an employee. We never did have any communication otherI give him instructions and he was on part-time basis. He'd just work in the afternoons. I didn'tbut as far as knowing him well, no sir, I didn't know him well.
¶ 19. Mississippi law provides that a juror is "disqualified" within the meaning of Miss.Code Ann. § 13-5-67 (1972) where on voir dire examination he or she has withheld information or misrepresented material facts. Myers v. State, 565 So.2d 554, 558 (Miss.1990). Odom v. State, 355 So.2d 1381 (Miss.1978) is our seminal case. Odom holds that the failure to respond does not warrant this Court granting an appellant a new trial unless the question propounded to the juror was (1) relevant to the voir dire examination; (2) unambiguous; (3) the juror had substantial knowledge of the information sought to be elicited and (4) prejudice in selecting the jury could reasonably be inferred from the juror's failure to respond. Odom, 355 So.2d at 1383.
¶ 20. We need be clear about the nature of the Odom rule. It imports an objective test: in the face of a clearly worded question propounded on voir dire examination, one that bears relevance to the case at bar, has the juror withheld substantial information or misrepresented material facts? Myers, 565 So.2d at 558. Voir dire examination is often the most crucial crucible in forging our primary instrument of justice: the fair and impartial jury. Id. Like a fine suit of clothes, a jury must be tailored to fit, and court and counsel examine prospective jurors under settled rules tending toward that fit. Id. When offering challenges for cause and challenges peremptory, parties and their lawyers must rely on the objective candor and responsiveness of prospective jurors, and nothing turns on who asks the question, so long as it was clearly worded. Id. Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal. Id. We presume prejudice. Id.
*253 ¶ 21. In the case at bar, the record reflects that counsel for the State on voir dire examination of the panel of prospective jurors, asked whether any of the panel members knew any of the witnesses, which included the assault victims. The objective facts established in the record of the post-trial hearing on the motion for a new trial are that juror Hannaford had employed two of the assault victims at his place of business at the time the assault occurred. Juror Hannaford admitted at the post-trial hearing that he recognized two of the victims, even though he did not recall their names. The question propounded by the State was worded adequately and could not fairly have been misunderstood. Clearly, Hannaford knew that two of the victims worked at the Ford dealership, even if he did not immediately recognize their names. When he saw one of the witness victims take the witness stand, he then knew without a doubt that the witness was a person he knew from the witness's employment at the Ford dealership. Even if he had not recognized the witness earlier, he had an obligation to disclose his later-acquired recognition of the witness in light of the voir dire questions, but Hannaford sat silent. Moreover, Hannaford knew Jeremy Dyess well enough to know that Dyess was not at the trial. That fact casts skepticism on Hannaford's assertion that he did not know the boys well because they only worked part-time at the Ford dealership.
¶ 22. Burroughs was on trial for aggravated assault of two of the juror's former employees. Common sense suggests that the presence on the jury of a person who bore this relationship to the victims and who remained silent in the face of a direct question regarding whether there was any knowledge of the victims, presents a potential for prejudice to the rights of the accused for a fair trial. Accordingly, we hold that the trial court abused his discretion in refusing to grant Burrough's motion for a new trial and reverse and remand this case for a new trial.

III. Sufficiency and weight of the evidence
¶ 23. Our reversing and remanding rather than reversing and rendering says by implication that we deem this issue to be without merit. However, to be clear, we cannot say that based upon the evidence in this case, reasonable and fairminded jurors could only find Burrough's not guilty, and without such a finding we cannot remove this case from the jury's consideration. See Harveston v. State, 493 So.2d 365, 370 (Miss.1986). This issue is without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., LEE, MOORE, AND THOMAS, JJ., CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE, J.
BRIDGES, J., Dissenting:
¶ 25. With respect to my colleagues in the majority, I cannot join them in holding the lower court in error based upon the trial judge's refusal to grant Burroughs a new trial. The connection drawn between the juror and the victims regarding their superficial relationship is tenuous at best. I believe the trial court correctly refused the motion for a new trial based upon the appellant's failure to show prejudice resulting from this most remote acquaintance.
¶ 26. Mr. Hannaford, the juror in question, testified by his silence that he did not recognize Dyess nor any other parties involved with the case during voir dire. Hannaford's silence on this matter was questioned later in a hearing on various post trial motions. In portions of the transcript quoted by the majority, Hannaford *254 clearly admits that he did not know who Dyess was when the trial began.
¶ 27. The majority expends much effort analyzing this case in light of the Odom factors which guide appellate courts in deciding whether not granting a new trial due to the failure of a juror to respond to a question during voir dire constitutes reversible error. I feel that this case falls outside the guiding principles of the Odom decision. Juror Hannaford was asked during voir dire whether or not he knew any of the involved parties. He did not respond. Once the victim passed in front of the witness stand, Hannaford recognized the young man as someone who worked part time at his car dealership along with literally hundreds of other students. I cannot see how Hannaford's failure to speak-up during voir dire can be held as reversible error when he did not recognize Dyess until after the trial began. It is clear from Hannaford's post trial testimony that his knowledge and recognition of the victim did not manifest itself until the victim walked in front of the jury box, after Hannaford had already been seated as a juror. It had been ten months since the two boys had worked for Hannaford's car dealership and given the relatively distant employer/employee relationship, it is not surprising nor unusual that he would have simply forgotten the names and faces of two part time workers.
¶ 28. To hold that a reversal is warranted on these facts would be tantamount to saying that almost any trial could be aborted on an "abuse of discretion" grounds. The standard for reversal this Court must adhere to is not simply whether we agree with the trial court below, but whether that trial court has abused the discretion it has been entrusted with in arriving at the contested decision. "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which have the reliability that we need and desire." Gavin v. State, 473 So.2d 952, 955 (Miss.1985). "If prejudice reasonably could be inferred, then a new trial should be ordered. It is, of course, a judicial question as to whether a jury is fair and impartial and the court's judgment will not be disturbed unless it appears clearly that it is wrong." Odom v. State, 355 So.2d 1381, 1383 (Miss.1978). Although Hannaford did not jump up and proclaim his relationship with the victims to the court after his revelation, the appellant has not shown any prejudice resulted, and it is incumbent upon him to do so. Hannaford testified that he could be fair and impartial. The mere fact that the juror had a brief employment relationship with the two victims would not have been a sufficient basis as a challenge for cause at trial because the trial judge stated in his order overruling Burroughs's motion for an new trial that "this Court does not find that the juror would have been excused during the trial."
¶ 29. A factual situation not unlike the one presented in the case at bar can be found in Herrington v. State, 690 So.2d 1132 (Miss.1997). Mrs. Griffin, a juror, was home having dinner with her family. Herrington, 690 So.2d at 1139. One of her children commented that their friend, M. S., had not been at school. Id. at 1139. Her second child replied, "Well, she must be in Court." Id. Mrs. Griffin immediately left the table and went to the restroom where her husband found her and asked if she was a juror on the case involving M.S. Id. Mrs. Griffin responded that it was the same case. Id. Her husband informed the children of their mother's situation and no further mention was made about the case. Id. In discussing this incident with the judge, Mrs. Griffin stated that her judgment would not be affected by the fact that her children were in school with M.S. Id. During voir dire, prospective jurors were asked if they knew M. S., and Mrs. Griffin failed to respond. Id. Mrs. Griffin explained that it had not even crossed her mind that M.S. was in school with her children. Id.
*255 ¶ 30. Our supreme court found that no abuse of discretion occurred when the trial judge refused to excuse Mrs. Griffin from the jury. See also Salter v. Watkins, 513 So.2d 569, 573 (Miss.1987) (when asked on voir dire, juror answered that he did not know defendant and that was an honest answer; therefore, he did not have "substantial knowledge of the information sought to be elicited"), McNeal v. State, 617 So.2d 999, 1004 (Miss.1993) (citing Miss.Code Ann. § 13-5-67 (1972)) (juror who had been accepted in a murder trial was not thereafter qualified to serve by her revelation that her daughter had been murdered six years before), United States v. Brooks, 677 F.2d 907, 912 (D.C.Cir.1982) (juror, when asked whether "any of you know the defendant," answered "no." After the trial was over and the defendant was convicted, the juror signed an affidavit claiming that he had noticed the defendant before the trial, had seen the defendant in his place of business at least seven or eight times and had paid him "particular attention" because of his neat appearance).
¶ 31. For the above reasons, I would affirm the lower court.
PAYNE, J., JOINS THIS SEPARATE OPINION.